120  481
143  ²692

## CARLSON v. CINCINNATI, SAGINAW & MACKINAW RAILROAD CO.

1. RAILROADS—INJURY TO SECTION HAND—CONTRIBUTORY NEGLIGENCE.

A railroad section hand, whose duty it was, under the rules of the company, to be on the lookout for trains, was guilty of contributory negligence, precluding a recovery for injuries sustained by reason of a switch engine's being backed down upon him while he was engaged in cleaning the tracks at a highway crossing, where he saw the engine when it was several hundred feet distant, awaiting a signal to cross, and resumed work with his back towards the engine, without keeping watch upon its movements.

2. SAME—RULES—BACKING ENGINE ACROSS HIGHWAY.

A railroad company is not liable to a section hand injured by a passing engine while he was cleaning the tracks at a crossing, on the ground of failure to observe a rule requiring a lookout on the footboard of an engine backed across a public highway, as the rule is for the protection of the public, and not of employés.

Error to Bay; Maxwell, J.  Submitted April 21, 1899. Decided June 28, 1899.

Case by John Carlson against the Cincinnati, Saginaw & Mackinaw Railroad Company for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

Plaintiff had been in the employ of the defendant as a section hand in its yards at West Bay City for about five years. One of his duties was to clean the tracks at the highway crossings, one of which was at Main street. Defendant has four tracks across this street, and the Michigan Central Railroad three. While plaintiff was at work picking out the dirt between the planking and the

rails, a switch engine backed against and seriously injured him. The engine had backed down the track to within about 300 feet of the crossing. The crew consisted of the conductor (who was also yard-master), engineer, fireman, and two switchmen. The intention was to cross the highway to a point two miles distant. The semaphore was against the right to cross. The engineer gave the customary signals by whistling to the signalman in control of the semaphore. After giving this signal, the engine stood there some time before receiving notice from the signalman to cross. Plaintiff saw the engine, and stood there watching it for 10 or 15 minutes. He testified, " I watched it so long because I was afraid of it, and wanted to see which way it was going." He then went to work, and looked up twice at the engine while at work. The conductor had left the engine, and gone into the interlocking tower, where plaintiff saw him. Plaintiff stood with his back towards the engine, or, as he expressed it, "with my back sideways towards the engine." He went to work, "feeling satisfied that the engine would not come where he was." Upon receiving notice from the tower, the engineer backed up, and when the engine reached the crossing it was going five or six miles an hour. The trainmen were in the cab with the engineer. No one stood upon the footboard on the back of the tender. The coal was piled up on the tender so high that those in the cab could not well see over it. Rule 40 of the defendant reads as follows:

"In no case must a train be backed over a public crossing or highway, unless there is a man on rear car to see that crossing is clear; nor must a car be cut loose and allowed to run over a public crossing or highway, unless there is a man on same."

The signalman in the tower and the conductor saw that plaintiff was paying no attention as the engine approached near him, hallooed to him, and did all in their power to attract his attention, but without avail. The court instructed the. jury that the employés upon the engine were

fellow-servants, and that for their acts the defendant was not liable. The theory upon which the case was left to the jury appears from the following charge:

"I charge you that, if the plaintiff was free from fault, and if this accident happened by reason of a regulation of that road permitting the running of an engine through and across the streets of the city without any lookout, the defendant is liable. I do not think it is liable on any other theory."

The gates at this crossing, which were about 200 feet apart, were down on account of the passing of a train upon the Michigan Central just before, and the coming of this switch engine. Just how far the plaintiff was from each gate is not shown by the record. He evidently was within less than 100 feet of one of them.

*Geer & Williams* (*E. W. Meddaugh*, of counsel), for appellant.

*Simonson, Gillett & Courtright*, for appellee.

GRANT, C. J. (*after stating the facts*). The only ground of negligence upon which plaintiff could recover was that submitted to the jury, viz., the failure to have an employé stand upon the footboard of the tender to warn him. The object of the rule requiring an employé to be upon the footboard when backing across public highways is for the protection of the public, and not of the employés of the company. *Rohback* v. *Pacific Railroad*, 43 Mo. 187.. There was no more danger to the plaintiff in working upon this crossing than there was at any other part of the tracks in the yard outside the highway. There is no testimony tending to show that employés understood that this rule was intended for a protection to them, or that the plaintiff so understood it. Evidently he knew that he was going into a place of danger; that it was his duty to keep a sharp lookout for his own protection; and that he did not rely upon such a warning, because he stood there 10 to 15 minutes, waiting for the

engine to pass over. All the witnesses who testified upon the subject, both those for the plaintiff as well as for the defendant, testified that it was the plaintiff's duty to watch out for approaching cars, and to get out of the way. One of the rules of the company provides: "Trackmen may expect trains at any moment, and must always be on the lookout and prepared for them." It is expected, and it is not unreasonable, that trackmen should look out for approaching trains and engines, and especially in yards, where they may be expected at any moment. There was a train going upon another road, and there was a mill near by, making some noise. The law did not permit the plaintiff to rely upon his sense of hearing alone. Obviously he did not intend to, but it is certain that he did. He knew that the engine might come that way. The engineer had signaled for the right to cross. There is nothing to show that he did not hear this signal. The gates were closed. A glance at his surroundings would have warned him of danger. A glance every few seconds towards this engine would have disclosed its approach. Such precaution would not have interfered with his work, and, if it would, there is nothing to indicate that the defendant prohibited him from taking it, or that it expected him to work without taking it.

*Keefe* v. *Railway Co.*, 92 Iowa, 182 (54 Am. St. Rep. 542), is very similar in its facts to this case. The plaintiff's intestate was struck by the tender of an engine which was backing up. The court said:

"The presence of the tracks and cars thereon, and the movement of engines, were constant warnings to him of danger. It is the duty of persons employed in such places to be reasonably diligent in guarding against accidents, and especially to observe and keep out of the way of moving engines and cars. They have no right to rely wholly upon the persons in charge of them to prevent accidents, but must use due care to avoid danger. These rules are founded upon the necessities of the business of operating railways. They are reasonable and just, and are fully sustained by the decisions of this and other courts."

Where plaintiff, an employé, stood with his back to the approaching cars, and did not look back or watch for the moving engine, and was struck, it was said:

"It cannot be that, under these circumstances, the defendants were compelled to send some man in front of the cars for the mere sake of giving notice to employés who had all the time knowledge of what was to be expected. We see in the facts as disclosed no negligence on the part of the defendants, and if, by any means, negligence could be imputed to them, surely the plaintiff, by his negligent inattention, contributed directly to the injury." *Aerkfetz* v. *Humphreys*, 145 U. S. 418.

Under circumstances somewhat similar, the supreme court of Massachusetts held that an employé had no right to abandon the use of his eyes, and rely upon a warning from every car that might be shunted upon the track where he was working. *Lynch* v. *Railroad Co.*, 159 Mass. 536. See, also, *Schaible* v. *Railway Co.*, 97 Mich. 318 (21 L. R. A. 660); *Daly* v. *Railway Co.*, 105 Mich. 193.

The plaintiff was clearly guilty of contributory negligence. It is unnecessary to discuss the other points raised.

Judgment reversed, and new trial ordered.

The other Justices concurred.