## SCHIMBERG v. CUTLER et al.

(Circuit Court of Appeals, Sixth Circuit. January 24, 1906.)

No. 1,433.

1. NEGLIGENCE—PREMISES ABUTTING ON HIGHWAY—DUTY OF ABUTTING OWNER.
Where an owner of land erected a retaining wall by the side of a high-way with the consent of the county commissioners, he was under no obligation to construct a rail on the top of the wall, to prevent people from falling off the highway onto his premises, so as to be liable to one attempting to go on the lot for his own purposes without any express invitation of the owner.

2. HIGHWAYS—GUARD RAILS—COUNTY COMMISSIONERS—DUTIES—STATUTES.
Rev. St. Ohio, § 4941-1, makes it the duty of the board of commissioners to maintain guard rails on each end of every county bridge, viaduct, or culvert, and on each side of every approach to every county bridge, viaduct, or culvert, whenever such approach or embankment is more than six feet high; and section 4941-3 provides that a failure to comply shall render the county liable for all accidents or damages which may occur therefrom, etc. *Held,* that such sections did not require county commissioners to construct a railing on a wall separating a highway approach to a canal bridge from adjoining property, where it was not to be anticipated that travelers on the highway would leave it for the purpose of going on such adjoining property for their own purposes and at a point where there was no invitation, usage, or necessity for so doing.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

The case brought here on this writ of error is an action for negligence from which the plaintiff alleges he sustained personal injury. The court below rendered judgment against the plaintiff upon demurrers of the defendants to his petition. The substance of the petition is as follows: A county road runs east and west through the hamlet of Jasper, in Pike county, Ohio, and passes over a canal running north and south through the hamlet. On the west side of the canal an approach, eight feet high at its eastern end, is built up sloping from the general level to the end of a bridge over the canal. On the north side of this approach, and next west of the canal, was a lot of land occupied by the defendants Cutler. They built a retaining wall along the south side of their lot against the north side of the approach, and midway of the length of this wall they built a store, the front or south end of which was flush with that side of the street. The foundations on the other three sides were built up about eight feet, level with the street at that point, and the main floor of the store was a little above that level. The petition does not state whether there was any sidewalk or pathway along the north side of the highway in this locality or not. On the evening of April 24, 1902, the plaintiff, who was a traveling salesman, had called at the store on business. On leaving it about 8:15 o'clock, he went from the front door around the southwest corner of the store and attempted to pass out from the highway upon the Cutler lot for the purpose of urinating. The night was dark and the street poorly lighted. Without perceiving that there was an embankment there, he stepped over it and fell to the ground below. He was severely injured by the fall and was disabled for several months. The Cutlers filed a separate demurrer to the original petition and the board of county commissioners also demurred. The court sustained the demurrer of the Cutlers, and overruled that of the commissioners. The plaintiff filed an amended petition, not substantially differing from the original, to which the defendants filed separate demurrers as before. The court again sustained the demurrer of the Cutlers, and with respect to that of the commissioners said: "Further consideration of the case convinces me that the injury to the plaintiff was due to his own fault and negligence, and not due to any default upon the part of

the county commissioners in the discharge of their duties, and the demurrer of the county commissioners to the petition, therefore, will be sustained." The plaintiff not desiring to plead further, judgment was entered dismissing the petition.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

E. E. Corwine, for plaintiff in error.
Ulric Sloane, for defendants in error.

SEVERENS, Circuit Judge, having made the preceding statement, delivered the opinion of the court.

It is not alleged that the plaintiff was attempting to go upon the Cutlers' lot upon any express invitation, or any invitation to the public implied from a sufferance by the Cutlers of the use by others of their premises for such or any other purpose. They were, therefore, not bound to contemplate that any person would attempt to commit an act which to them would be a trespass. The gravamen of the complaint against them is that they owed to the public a duty to build a railing at the top of the wall, so as to prevent people from falling off the highway upon their premises. It does not appear that there was any sidewalk or path along the edge of the street, or that there was any traveled way other than the roadbed of an ordinary highway. The court could imply no more than this in the face of a demurrer. Moreover, it is charged by the plaintiff that it was the duty of the commissioners to construct a railing at this place. It is not alleged that the building of the retaining wall was improper either in design or execution, and it could not be said as matter of law that the owners of the adjacent premises exceeded their rights in building it, and the petition alleges that it was done with the assent of the board of county commissioners. If the conditions thus brought about indicated the necessity of a railing for the protection to travelers, we think the duty rested on the board, and not upon the owners of the adjacent property. Then as to the duty of the board of county commissioners, we refer, without repeating, to what has been said in regard to the statements of the petition respecting the character and uses of the highway, and, among other things, to the failure to allege that there was any traveled path along the top of this embankment. We make this particular reference, because as a general rule, in the country and in small collections of inhabitants, it is not usually deemed necessary to fit the whole width of the highway for the purposes of travel, differing in this regard from the requirements in cities and large towns.

But, without dwelling longer upon this aspect of the case, we proceed to inquire whether the plaintiff was, at the time of the accident, in the exercise of a right with respect to which he was entitled to invoke the duty of protection which the county board owed to the public. It may be conceded that if there was a way appropriated to the use of, or actually used by, the public along the margin of the highway upon the embankment in question, and the plaintiff while traveling on it had missed his footing, or by any other accidental cause, without negligence on his part, had fallen off the side of the way and been injured, the county board would have been liable for his damages.

The Revised Statutes of Ohio of 1906 contain provisions as follows: Section 4941–1 provides that:

"It shall be the duty of every board of county commissioners in this state to, within two years after the passage of this act, erect or cause to be erected, and maintain, where the same has not already been done, one or more guard rails on each end of every county bridge, viaduct or culvert, the same being more than five feet high; and also erect, or cause to be erected, where the same has not already been done, one or more guard rails on each side of every approach to each and every county bridge, viaduct or culvert, wherever said approach or embankment is more than six feet high. * * *"

Section 4941–2 provides that:

"Said guard rails shall be erected in a substantial manner, having sufficient strength to serve as a protection to life and property."

Section 4941–3 of said statutes provides:

"Each and every failure to comply with the provisions of this act shall render the county liable for all accidents or damages as the result of such failure, which may occur after a period of five years from the passage of this act."

86 Ohio Laws, p. 100, enacted March 14, 1889.

These statutory provisions are, of course, to be construed by reference to the nature of the subject to which they relate; that is to say, the protection of persons using the highway for the purposes of travel. The liability here relied upon is one imposed by statute, and the decisions of those states where the liability of the municipality for defects in highways rests upon statutory contracts are most pertinent. Of such statutes it is said in 5 Thompson on Negligence, § 920, that "they give a right of action only to persons using the highway as travelers." In Blodgett v. City of Boston, 8 Allen, 237, it was contended that "if a highway is unsafe for travelers any person sustaining an injury may recover; that there is no limitation to the class of persons who may recover." But the court overruled this contention, saying:

"The doctrine has been often declared by this court that the liability of towns and cities for injuries to persons or property occasioned by defects in highways is intended to be commensurate only with the duty imposed on them; that is, to keep them in repair, so that they may be 'safe and convenient for travelers at all seasons of the year.' This is the necessary and unavoidable implication resulting from the provisions of the statutes which impose the duty and declare the liability. In the absence of any clear and explicit enactment requiring a different interpretation, the reasonable construction of a statute which creates an obligation and at the same time prescribes the penalty or liability for its breach is that the standard of responsibility is not intended to be greater or more extensive than the rule of duty. The latter constitutes the measure by which to ascertain and limit the extent of the former. It has accordingly been held that towns and cities are not liable for damages occasioned by defects in highways to persons who were not travelers thereon at the time the injury to themselves or their property was suffered."

So long as the traveler is using it for such purposes he has the right to expect that public officers having it in charge have performed their duty. But when he leaves it and enters private property he ceases to have such right. Especially would this be so when, as in this instance, he leaves the highway where there is no bypath and at

an unusual and unaccustomed place. It is true that, if the traveler is compelled by necessity to turn out of the highway temporarily in order to pursue his journey, he would not lose his right as such in going out of and returning into the highway. But this is a necessity arising from some defect or obstruction in the highway, and not some peculiar necessity of his own. The board of county commissioners were bound to contemplate such damages as the traveler would incur while using the highway for its intended purpose. But they were not required to anticipate that the traveler might be leaving the highway at such a place as this for a private purpose, and take measures for guarding him while doing so. In the decided cases upon this subject it seems to be assumed, when not expressly stated, that officials charged with the oversight of public highways owe the duties of their office to the public while the latter are traveling upon them, or being in the highway and occupied with the ordinary incidents of travel, such as stopping for rest, or engaging for a moment in conversation with a passing acquaintance or one standing by the wayside, or stopping for casual repairs. For cases involving the general principles applicable to the subject we have been discussing, see Smith v. Inhabitants of Wendell, 7 Cush. 498; Kellogg v. Inhabitants of Northampton, 4 Gray, 65, 69; Stickney v. Salem, 3 Allen, 374; Dickey v. Maine Tel. Co., 46 Me. 483; Brown v. Skowhegan, 82 Me. 273, 19 Atl. 399; Sykes v. Pawlet, 43 Vt. 446, 5 Am. Rep. 595; Goodin v. City of Des Moines, 55 Iowa, 67, 7 N. W. 411; City of Scranton v. Hill, 102 Pa. 378, 48 Am. Rep. 211; Shearman & Redfield on Negligence, § 384.

In the case of Stickney v. Salem, the plaintiff's intestate was leaning upon a railing at the termination of a street, engaged in general conversation with a friend. The railing was defective and gave way. The man fell backward over the wall onto the beach below and was injured. It was held there could be no recovery, and Bigelow, C. J., said:

"Taking the statement of the plaintiff's witness, who was with the deceased at the time of the accident, to be true, it is clear that no cause of action against the defendants was proved. His testimony shows that the deceased was not using the railing, which is alleged to have been defective, for a purpose for which the city was bound to erect and maintain it. His improper and unauthorized act contributed to the accident. The legal obligation of keeping a sufficient railing upon a highway is imposed only when it is necessary to mark the limits of that part of the road within which persons may safely travel, or to furnish a guard against dangerous places, so that proper protection may be afforded to those who in the exercise of due care as travelers, while passing or standing on the way, might otherwise be exposed to accident or injury. If a person, without fault or negligence on his part, is forced against a railing, or takes hold of it to aid his passage, or falls against it by accident, or has occasion to use it in any way in furtherance of the lawful and reasonable exercise of his right as a traveler, and by reason of any defect or insufficiency it gives way and causes an injury, a town or city would be liable to make full compensation for the damages thereby occasioned. But this is the extent of the liability."

Our attention has not been called to any decision of the Supreme Court of Ohio very closely in point. But in the case of City of Dayton v. Taylor's Adm'r, 62 Ohio St. 11, 56 N. E. 480, that court had to deal with a case where the decedent had, while traveling in a dark

night, suffered injury in the circumstances stated in the following paragraph of the syllabus:

"A pedestrian, who, without necessity and for his own convenience, departs from the sidewalks and street crossings, upon which he would have avoided injury, and crosses a street intersection diagonally, and is injured by slipping into a catch-basin which lay between the crossings, must be held to have assumed the risks which lay in the path he thus chooses."

The principles which we have accepted as correct as well as the reasons on which they rest were those there adopted and applied. And it is proper to note that Judge Davis, in delivering the opinion of the court, expressed a view in regard to the plaintiff's negligence much the same as that expressed by Judge Thompson, who decided this cause at the circuit, which we have quoted, in the statement preceding this opinion. Judge Davis in the opinion referred to said:

"He was not exercising ordinary care for his own safety. * * * And in departing from the usual and safe way which the municipality had provided for him, he assumed all the risks which lay in the path he chose for himself."

In Goodin v. City of Des Moines, supra, the injury happened while the plaintiff was entering the highway at a defective place from private premises. In several cases it has been held that the municipality was not liable for damages sustained by one who encountered an obstruction within the lawful limits of the highway, when he turned off from the traveled way and was passing into a private way of his own. Perhaps these cases may be thought to apply too rigorous a rule. For there it might fairly have been anticipated that some travelers would be likely to use that part of the legal highway. The ground on which they may be supported is that the duty of the municipality or its officials was a duty to the general public, and not to individuals who were making a special use of the highway outside the traveled roadway. In the present case, however, as we have already pointed out, it was not to be anticipated that travelers on this highway would deliberately leave it at a place where there was no invitation to leave it, and no usage or necessity for any member of the public to leave it. And while the neglect to comply with the statute would render the board of county commissioners liable for all the consequences which they should reasonably be required to anticipate as a consequence of such neglect, it would not render them responsible for consequences not reasonably to be anticipated.

The court below was of opinion that the plaintiff could not maintain this action because he was himself negligent; and we are much inclined to that conclusion. That he should have gone from a place of safety off in the darkness into an unknown and undistinguishable place seems hardly reconcilable with the conduct of a prudent man. Nothing appears to show that upon proper request to those in the store the opportunity for relieving his need would not have been supplied or pointed out. Ordinarily the question of contributory negligence is one for the jury; but, like any other question of fact, the case may be so clear that no two opinions could be reasonably had

upon it, in which condition it is a question for the court. But we rest our decision upon the ground previously stated, and hold that the demurrers of the defendants were properly sustained.

The judgment should be affirmed, with costs.