### NORFOLK & W. RY. CO. v. GESSWINE.

(Circuit Court of Appeals, Sixth Circuit. March 17, 1906.)

#### No. 1,443.

1. MASTER AND SERVANT—INJURIES TO SERVANT—NEGLIGENCE—PROXIMATE CAUSE.

To justify a recovery by the administrator of a trackman for death suffered while repairing the track, from collision with a passing train, it is indispensable that the proximate cause of the injury be shown to be the neglect by the railroad company of some duty to him in respect to his protection from injury by passing trains.

2. SAME—INSTRUCTIONS.

In an action for death of a brakeman by collision with a passing train as he was repairing the track, an instruction that his place of employment was a dangerous place, and that, if he was hurt while trains were being managed and operated in the usual and ordinary way, there could be no recovery, was proper.

[Ed. Note—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 554.]

3. SAME—SIGNALS.

The custom of a railroad company to give signals for crossings, as required by Rev. St. Ohio 1892, §§ 3336, 3337, was for the sole benefit of persons using, or about to use, the crossing, so that a failure to comply with such custom did not constitute negligence of which the administrator of a trackman killed in collision with a passing train, while working near a crossing, could complain.

4. SAME—EVIDENCE.

In an action for death of a brakeman by being struck by a train while he was working on the track near a crossing, it was error for the court to permit a member of deceased's gang to testify that they relied on the railroad's custom to ring and whistle for such crossings to warn them of the approach of trains, when repairing track in the vicinity.

5. SAME—CITY ORDINANCE.

Trackmen employed by a railroad, and engaged in repairing the track, are not within the protection of a city ordinance limiting the speed of trains within the corporate limits of the city.

6. EVIDENCE—HEARSAY—RES GESTÆ.

In an action for death of a railway trackman by being struck by a train, evidence that on the morning in question witness saw the train and "talked about it running fast," not shown to have been contemporaneous with the passing of the train, was not res gestæ, but was inadmissible as hearsay.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

This was an action for negligently running over and killing Henry Gesswine, the intestate of the defendant in error. Gesswine was a section hand in the employment of the railroad company at the time of his injury, and was engaged as one of a gang of hands in repairing the company's main track within the corporate limits of the city of Ironton, Ohio, and was run over and killed by a passing passenger train. This train was a regular train and was ordinarily on time. On this occasion it was a few minutes late, and was traveling at something greater than its usual speed when passing through Ironton. The accident occurred at 7:30 in the morning, and the men had been but a short time at work. The petition avers that the morning was very foggy, so much so that objects could not be seen until within 10 or 15 feet. It was also averred that at the point where the accident occurred the decedent's view of the track was obscured by buildings and freight cars upon adjacent tracks, and that his hearing was impeded by the noise of a switch engine moving back and forth upon adjacent tracks. The track of the railroad company through the city of Ironton was crossed at right angles by a number of public streets or roads in the vicinity of the place of collision. It was averred also that the invariable habit of the company was to ring the bell and sound the whistle on approaching these crossings, and that this practice was known to deceased and relied upon as a means of warning by him when so at work upon the track in the vicinity of such crossings. It is also averred in said petition: "That, for a long time prior to and up to the date of the injuries complained of, it had been the custom of said defendant in running its trains on said track through the city of Ironton and past said crossings, and the place where decedent then was, to approach said point and crossings at a speed not exceeding 10 to 15 miles per hour, which custom was at the time well known to and relied upon by said decedent."

It is then charged that decedent, while in the discharge of his duty, under the direction and order of his section boss, was "adzing ties in a stooped position upon said main track of said defendant, without any carelessness or negligence on his part, the said defendant, in utter disregard of its duty and the safety of said decedent and other employés engaged in the line of their duty at said point, carelessly and negligently ordered and caused said decedent to proceed in his work and duty at said time and place, and in the manner above set out; and defendant then and there carelessly and negligently failed to make any protection whatever, by placing a guard, to give decedent warning of the approach of trains at said point, or take any other means for the safety of the said decedent, while in the performance of his duty aforesaid; and defendant carelessly and negligently failed and neglected to cause notice or warning to be given to said decedent by sound-

ing the whistle or ringing the bell on said train approaching said point, as it was the custom of the defendant theretofore to do; and defendant then and there failed and neglected in any other manner to give decedent warning of the approach of its trains upon said track at that point; and then and there, while the decedent was so employed, the defendant carelessly and negligently caused and permitted a certain passenger train, pulled by two locomotives, to run upon said track approaching the point where the decedent then was, off of any schedule time of said defendant, to approach from the south, running north from Kenova, through and within the limits of the city of Ironton upon said main track where decedent then was, at a high and extraordinary rate of speed, to wit, at a speed of from 45 to 50 miles per hour, without sounding the whistle or ringing the bell upon said train, and without any notice or warning, or means of protection to said decedent; and then and there negligently and carelessly caused said train, so approaching, to rush upon and to strike the decedent, so engaged in the line of his duty as aforesaid, striking the decedent in the head and about the body, knocking him off of said track a distance of several feet, thereby causing injuries to said decedent from which he immediately died."

The case was submitted to a jury upon the issues joined who found for the plaintiff.

Henry Bannon, for plaintiff in error.

W. D. Jones and R. D. Miller, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

After having made the foregoing statement of the case, LURTON, Circuit Judge, delivered the opinion of the court.

To justify a recovery by a trackman for an injury sustained while engaged in repairing track from collision with a passing train, it is indispensable that the proximate cause of his injury shall be shown to have been the neglect by the railway company of some duty due to him in respect to his protection from injury by passing trains.

Upon this subject the circuit judge, who presided at the trial of this case, correctly stated the law, when he said:

"Now, this man was one of a number of men who were employed as section men on the railroad. They were engaged in repairing the track, taking out rails, putting in new ones, taking out cross-ties and putting in new ones, and hewing them into proper form and shape, and were working on the railroad track, while the trains were being operated in the usual way—manifestly, a place of danger. A railroad does not suspend the operations of its trains until the track can be put in order, and the proposition to these section men was, 'We will run the trains and operate the road as heretofore, as we ordinarily do, and between trains you must do this work and look out for yourselves to avoid being injured by the trains,' and the section men accept the employment upon those terms, and, if an accident occurs and they are hurt while the trains are being managed and operated in the usual and ordinary way, they can have no just ground of complaint against the railroad, it is not the fault of the railway company." Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758; Morris v. Boston & Maine Rd., 184 Mass. 368, 68 N. E. 680; Carlson v. C., S. & M. Rd., 120 Mich. 481; 79 N. W. 688; Railroad Co. v. Hester, 64 Tex. 401.

The uncontradicted evidence was that section men whose labors kept them on or about the track were expected to be alert and protect themselves against passing trains, and there was no averment in the petition of any rule or practice of the company requiring approaching trains to give warning to track repairers by either bell or whistle. If, however, the servants operating this particular train had actually discovered the deceased in a position of peril, and apparently unaware

of his danger, the most elementary principles of law and humanity would have required that they should do all that the time would admit to avoid injuring him. Kansas City, etc., Rd. Co. v. Cook, 66 Fed. 115, 13 C. C. A. 364, 28 L. R. A. 181. There was no averment in the petition that the man upon this engine discovered Gesswine's danger and no evidence to bring this principle of law into application.

The plaintiff in error grounds his action upon an alleged custom or practice to ring the bell and sound the whistle for certain nearby street and road crossings, and that Gesswine relied upon the undeviating habit of the company in that matter to give him warning of the approach of trains while working upon the main track, and that these crossing signals were not given upon the morning of his injury. As to whether the whistle was sounded upon approaching the crossings referred to was a matter about which there was a conflict of evidence, and for the purpose of the present review we must assume that such crossing signals were omitted upon this occasion. Another ground upon which the right of action is rested is that the train which collided with deceased habitually traveled through the limits of the city at a speed not exceeding 10 to 15 miles per hour, and that this fact was known to and relied upon by Gesswine, but that on this occasion the train was moving at an extraordinary speed of from 45 to 50 miles per hour, and thus came upon him with an unexpected rapidity which allowed no reasonable time to get out of the way, considering the difficulty of seeing its approach by reason of the fog or of hearing it by reason of the noise of a nearby switching engine.

First, as to the omitted crossing signals: Gesswine was not a traveler using or about to use a crossing. He was not even at work upon the track at a crossing, though there were crossings on either side of him; the crossing nearest on the side from which this train approached being within about 100 feet. The evidence of a "custom" to ring or whistle for that and other crossings withing hearing was objected to, upon the ground that crossing signals are intended for those who are crossing, those who are about to cross, and those who have just crossed a public highway, and are not required or given for the benefit of employés engaged in work upon the track. This specific objection was overruled, and the evidence admitted without restriction or limitation.

Sections 3336 and 3337, Rev. St. Ohio 1892, provide for the giving of signals for railroad crossings, and the so-called "custom" was a compliance with this statute. Such statutes are obviously for the benefit of those using or about to use the crossing, and do not impose any duty in respect to any other class of persons. This is the construction placed on the Ohio statute in Railway Co. v. Workman, 66 Ohio St. 509, 64 N. E. 582, 90 Am. St. Rep. 602. A like construction has been given such statutes in other jurisdictions. Reynolds v. Grt. N. R., 69 Fed. 808, 813, 16 C. C. A. 435, 29 L. R. A. 695; Harty v. Cent. Rd. Co., 42 N. Y. 468; Railroad v. Feathers, 10 Lea (Tenn.) 105; Hale v. Railroad, 34 S. C. 292, 13 S. E. 537; Railway Co. v. Gravitt, 93 Ga. 369, 20 S. E. 550. In Schimberg v. Cutler (decided by this court during this term) 142 Fed. 701, we held the

liability imposed by statute for failing to erect guard rails at danger-
ous places along a public road was imposed only for the benefit of
those using the road as such. The neglect to comply with the statute
was not therefore negligence of which the deceased could complain.

The principle is the same whether the "custom" of ringing and
whistling for road or street crossing be imposed by rule of the com-
pany or by operation of the common law in respect of the care proper
to be exercised at points where the railway and the public have equal
rights, as at a public crossing. The duty would be one imposed for
the benefit of those using or about to use the crossing. That such road
crossing signals were not given upon this occasion may be relevant,
provided it otherwise appears that the circumstances were such as to
make it the duty of the company to give to trackmen some audible notice
of the approach of its trains. A warning whistle, upon approaching
a street crossing within 100· feet of where Gesswine and his fellows
were at work, would in fact be a warning to him, although primarily
intended to warn those using the crossing. Failure to discharge some
duty owed by the company to employés engaged in track repairing,
under the circumstances of this case, is indispensable to a recovery
by this plaintiff, and evidence to establish a custom to give signals
for another purpose, and for the benefit of the general public using
a crossing, was not competent or relevant to make out the breach of
an actionable duty to Gesswine.

The court erred, for the reasons already given, in permitting the
witness Frank Gesswine to testify that he, and the others of the gang
of which the witness and deceased were members, relied upon the
custom of the company to ring and whistle for such crossings to warn
them when repairing track in the vicinity of the approach of trains.

The same principle is applicable to the municipal ordinance of Iron-
ton in respect to the speed of trains within the corporate limits. Such
ordinances are for the benefit of the public. Section men, whose duty
required them to work upon the track, cannot predicate negligence
upon disobedience of such a law. Such laborers when engaged in
the discharge of their duties are not within the protection of such
ordinances.

Columbus Webb was one of plaintiff's witnesses to prove the exces-
sive speed of the train which collided with Gesswine. This occurred:

"Q. Did you see the train go by that morning that killed those men? A.
Yes, sir; I seen it that morning, if I was there, or wherever I was, I seen
that train that morning and talked about the train. Q. What did you talk
about. A. I talked about the train. Q. Well, what was said?"

Counsel for the defendant here objected to this question, "because
it is hearsay and the detailing of a conversation." The objection was
overruled, and the witness answered by saying: "Talked about it
running fast." This was error. The answer was prejudicial, as tend-
ing to show that the speed of the train was so unusual and extra-
ordinary as to be the occasion of conversation and comment. What
was said was not res gestæ for it is not shown to have been contempo-
raneous with the passing of the train. It may have occurred at any
time that morning and at any place in the town. What the witness

said to others or they to him was hearsay, and the evidence should have been excluded.

No error has been assigned upon the charge of the court other than upon its refusal to instruct the jury to find for the railway company. The case is to be reversed for the errors already indicated. The question arising upon the denial of the motion for a peremptory instruction is not free from doubt, and a different face may be put upon the case upon another trial. We therefore forbear to express any opinion upon the facts of the case, or upon other questions presented by the charge, but not assigned as error.

Reverse and remand for a new trial.