CONNELLEY v. PENNSYLVANIA R. CO.

(Circuit Court of Appeals, Third Circuit. December 2, 1912.)

No. 1,682.

1. MASTER AND SERVANT (§ 206*)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

An employé assumes the obvious and unavoidable risks of the employment, and the employer violates no legal duty in failing to protect an employé from the dangers of such employment.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 550; Dec. Dig. § 206.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

2. MASTER AND SERVANT (§ 213*)—ASSUMPTION OF RISK.

A trackwalker employed to walk over and watch tracks and repair small defects, while there is a constant passing of trains, assumes the risk of injury by being struck by trains properly operated, and he must adopt for his self-protection reasonable safeguards.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 559–564; Dec. Dig. § 213.*]

3. MASTER AND SERVANT (§ 137*)—INJURY TO SERVANT—NEGLIGENCE.

A railroad company employing trackwalkers to constantly walk over and watch the tracks and repair small defects required them to go in pairs to aid them in protecting themselves from dangers arising from the constant operation of trains. It also placed a brakeman on switching trains. Two trackwalkers, experienced men, stopped to make repairs while enveloped in steam escaping from a standing engine. The brakeman was on watch at the time, and had the emergency brake ready, but the steam made it impossible for him to see the men, and they could not see the approaching train. *Held,* that the company was not guilty of any breach of duty, and was not liable for the death.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 269, 270, 273, 274, 277, 278; Dec. Dig. § 137.*]

In Error to the District Court of the United States for the Eastern District of Pennsylvania.

Action by Ellen Connelley against the Pennsylvania Railroad Company. There was a judgment for plaintiff, and defendant brings error. Reversed, with instructions.

John Hampton Barnes, of Philadelphia, Pa., for plaintiff in error.
Guilliaem Aertsen, Jr., and Francis Rawle, both of Philadelphia, Pa., for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

BUFFINGTON, Circuit Judge. In this case the plaintiff, Mrs. Ellen Connelley, administratrix of Thomas Connelley, brought suit against the Pennsylvania Railroad Company, charging it with negligence in operating one of its trains, by reason of which negligence her husband, Thomas Connelley, was killed. On trial she recovered a verdict, whereupon the railroad moved for judgment notwithstanding such verdict on the ground, amongst others, that the proof showed no neg-

ligence on the part of the defendant. The trial court denied such motion, and entered judgment in plaintiff's favor. Thereupon the railroad sued out this writ, alleging the proofs failed to show its negligence, and that binding instructions in its favor should therefore have been given.

The statement of claim avers deceased was employed as a track-walker on the tracks of the main line of the defendant in the city of Philadelphia between Broad street and West Philadelphia Stations, and that "while the said Thomas Connelley was so employed, and in the course of his said employment, he was on the 4th day of November, 1910, run down and killed by a train belonging to and operated by the defendant company by reason of the negligence of the defendant company's employés in operating the same, and by reason of the negligence of the defendant company's employés in failing to give the said Thomas Connelley while so employed due and proper warning of the approach of said train." The proofs showed that there are eight or nine tracks between these two stations, that there are numerous cross-overs and frogs, and the system widens into 16 tracks running into Broad Street Station. Over these tracks there is the constant passage of several hundred trains incident to such a station. The employment of the deceased was to continuously walk over and watch these tracks, and repair any small job, such as tightening bolts, etc. The trackwalkers go in pairs, so that they can better lookout for each other's safety. At the time of the accident Connelley and Rowan, his companion, who were both experienced men, were walking their beat together. It was a dull, damp, and misty morning. When near Twenty-Second street, they came opposite an engine which was standing still and blowing smoke and steam towards the track on which these two men were. This steam so enveloped them as to hide them from view. Here the men stopped, and Connelley began tightening a bolt. About a minute or two before the accident, Rowan called Connelley's attention to the steam enveloping them, and said they had better move to one side. Rowan's account is:

"I says, 'There is a lot of steam here.' I says, 'We had better move to one side.' That was about a minute or two before this happened, and the last words he spoke. He said he had the bolt nearly tightened now. Just about a minute or so, I judge it was over a minute after that, this here draft came along. Of course, we could not see it very handy. Of course, there was steam blowing there, and I did not see it until about five or six feet away. So I hollered as soon as ever I seen it coming, you know, and I says to myself, if I jump, the wheels may happen to catch me, so I stood right in the middle of the track with my back to it, and let the train hit me. I went right down, and one of the big cars and half a car went right over me."

Connelley was struck just after Rowan went down, but, instead of falling in the middle of the track as Rowan did, he fell on the rail, was run over, and killed. The train that struck him was composed of empty passenger cars, and was being backed into the Broad Street Station. On the end of the train which struck decedent a brakeman was stationed to give warning to any one he saw by shouting or whistling. His testimony was that he was on watch, and had control of the air brake, but, owing to the cloud of steam enveloping Connelley and

Rowan, he did not see them until the car was hitting them, that he instantly applied the air, but, on account of the wet rails, the train slid. The testimony of the track foreman was:

"You cannot warn the men of every train coming. They are supposed to watch for themselves. They have a steady job of trackwalkers, walking these tracks, and they walk the tracks all over in the morning and continue, and if they see anything wrong, of course, it is their duty to repair it—that is, small jobs, tightening bolts, etc.—and one of these men is supposed to watch for the other while the other is working. That is the instructions they get."

The case was submitted to the jury under instructions:

"The first thing, therefore, for you to determine is whether or not there was negligence in the operation of the train that killed Mr. Connelley. If there was no negligence in the operation, then there can be no recovery in this case."

The above facts were all proved by the plaintiff, and are undisputed. We are clear they disclose no negligence on the part of the railroad in operating its train, and that the decedent's death, instead of being caused by any negligence or want of care on the part of the railroad, was caused by the risks incident to the employment he followed.

[1] It is an obvious fact that many occupations, as for example a powder mill operator, a structural iron worker, a diver, a blaster, a trackwalker, necessarily subject those who follow them to great dangers. When, therefore, a man contracts for such employment, he knows and takes on himself the risks and dangers incident to such dangerous work. His assumption of those obvious and unavoidable risks is in the very nature of things part of his employment. It follows, therefore, that the employer violates no legal duty to the employé in failing to protect him from dangers which cannot be escaped by any one doing such work. Narramore v. Cleveland, C., C. & St. L. Ry. Co., 96 Fed. 298, 37 C. C. A. 499, 48 L. R. A. 68.

[2] It is obvious that even where a railroad operates its trains, and moves its switch drafts in a proper and careful manner, trackwalkers and repairmen are necessarily subjected to great risks. Their very occupation is one of constant peril. Indeed, it follows from the nature of such employment that the duty of self-preservation has to rest on them, for no adequate protection, other than self-protection, can be afforded them. And such has been the reasonable holding of the law. Thus in Norfolk & W. Ry. Co. v. Gesswine, 144 Fed. 56, 75 C. C. A. 214, it was said:

"This man was one of a number of men who were employed as sectionmen on the railroad. They were engaged in repairing the track, taking out rails, putting in new ones, taking out cross-ties and putting in new ones, and hewing them into proper form and shape, and were working on the railroad track, while the trains were being operated in the usual way; manifestly, a place of danger. A railroad does not suspend the operations of its trains until the track can be put in order, and the proposition to these sectionmen was, 'We will run the trains and operate the road as heretofore, as we ordinarily do, and between trains you must do this work and look out for yourselves to avoid being injured by the trains,' and the sectionmen accept the employment upon these terms, and if an accident occurs, and they are hurt while the trains are being managed and operated in the usual and ordinary way, they

can have no just ground of complaint against the railroad. It is not the fault of the railway company."

So, also, in Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758, where an experienced trackman was injured by a moving train in a switching yard, it was said:

"Under such circumstances, what negligence can be attributed to the parties in control of the train, or the management of the yard? They could not have moved the train at any slower rate of speed. They were not bound to assume that any employé familiar with the manner of doing business would be wholly indifferent to the going and coming of the cars. There were no strangers whose presence was to be guarded against. The ringing of bells and the sounding of whistles on trains going and coming and switch engines moving forward and backward would have simply tended to confusion. * * * It cannot be that, under these circumstances, the defendants were compelled to send some man in front of the cars for the mere sake of giving notice to employés who had all the time knowledge of what was to be expected. We see in the facts as disclosed no negligence on the part of the defendant."

Indeed, in thus making self-protection the substantial safeguard of trackwalkers and sectionmen, the law is reasonable and just, for no other dependable safeguard can be afforded their perilous work in the practical operation of railroads. As said in Keefe v. Railway Co., 92 Iowa, 182, 60 N. W. 503, 54 Am. St. Rep. 542, "These rules are founded upon the necessities of the business of operating railways," and in Rosney v. Erie R. Co., 135 Fed. 311, 68 C. C. A. 155:

"An elaborate system of signals by ringing bells, sounding whistles, swinging lanterns and waving flags, designed to cover the erratic movements of switching engines and extra freight trains, would quite likely have tended to complicate and confuse the situation."

This rule has the uniform support of courts in all sections of the country. Morris v. Boston & M. R. R., 184 Mass. 368, 68 N. E. 680; Bancroft v. Boston & M. R. R., 67 N. H. 466, 30 Atl. 409; Railroad Co. v. Hester, 64 Tex. 401; Carlson v. Cincinnati, S. & M. R. Co., 120 Mich. 481, 79 N. W. 688; Pennsylvania R. R. Co. v. Wachter, 60 Md. 395.

[3] In view of these decisions, it is clear, therefore, that, so long as the defendant railroad used its terminal tracks by running its trains properly thereon and in the usual way, the duty of guarding himself against such trains rested on Connelley, and a study of this testimony leads to the sad conclusion that the death of this unfortunate man was due to his own momentary disregard of the peril of his situation. To aid these trackwalkers in taking care of themselves, the railroad required them to go in pairs, and, indeed, Connelley's companion called his attention to the enveloping steam, and advised their moving aside. Obviously self-preservation, the steam enveloped position he was in, together with the knowledge that trains were constantly moving, should have led the decedent to heed the warning instead of making chance and not care the insurer of his safety. The failure of decedent to heed this timely warning and step aside undoubtedly cost him his life. The railroad had taken the additional step of placing a brakeman on the switching train. He was on watch and had the emergency

brake ready, but the steam which enveloped Rowan and Connelley until they were struck made it just as impossible for the brakeman to see them as it was for them to see the approaching train.

Finding, as we do, no lack of care or omission of duty on the part of the railroad, we are constrained to reverse this case and remand it to the court below with instructions to enter judgment for the defendant.

This conclusion renders it unnecessary to pass on the other questions raised in the briefs.