TOMMIE EUGENIA THORNTON, ADMX. v. NASHVILLE, CHATTANOOGA & ST. LOUIS RY.

Eastern Section.  February 26, 1927.

No petition for Certiorari was filed.

1. Railroads. A railroad owes its employees working on its tracks no duty to keep a lookout for them.

In an action to recover damages for the death of a maintenance man of the railroad where the evidence showed that the engine crew did not see him, held that the plaintiff could not recover because under such circumstances the railroad owed its employee no duty to look out for him.

2. Railroads. Assumption of risk. An employee of a railroad assumes the risk of his employment.

An employee of a railroad must assume the risk of the ordinary and necessary operation of trains and the railroad owes him no duty to keep a lookout for him and warn him of approaching trains.

Appeal in Error from Circuit Court of Hamilton County; Hon. Oscar Yarnell, Judge.

Affirmed.

Tatum & Tatum, of Chattanooga, for plaintiff in error.

Brown & Spurlock, of Chattanooga, for defendant in error.

PORTRUM, J.—This suit was instituted by the plaintiff, Mrs. Tommie E. Thornton, administratrix of the estate of William T. Thornton, her deceased husband, against the Nashville, Chattanooga & St. Louis Ry. on July 25, 125.

It is alleged in the pleadings that the Railway Co. was a corporation engaged in operating cars as a common carrier, in the States of Tennessee, Georgia and Alabama, and that on April 30, 1925, the plaintiff's intestate, Wm. H. Thornton, was an employee and servant of the defendant, Railway Co., in the capacity of a maintenance man, and his duty required him to travel over the roadway in a motor car furnished him by the company, in order that he might keep in repair, telephone and telegraph wires, which defendant used in the operation of its trains. On the day above mentioned, Thornton proceeded from Bridgeport, Ala., to Dunlap, Tenn., using his motor car, for the purpose of repairing and inspecting telephone and telegraph wires; and after discharging his duties he then started to return from Dunlap to Bridgeport.

It was a part of Thornton's duty to call the dispatcher, in order to locate the movement of the trains, before he used the road bed in the movement of his velocipede. It is alleged that he did this, but the proof is silent upon the question.

Thornton was accompanied upon his return journey by another, who occupied a seat on the car, and upon reaching a point several hundred yards north of the limits of the defendant's switch yards in South Pittsburg, Tenn., where the railroad tracks make a curve, the company, through its servants, negligently, carelessly and without warning, and in violation of the rules of the company, without keeping a lookout ahead, ran one of its locomotives, from an opposite direction, on and against Thornton and the motor car in which he was riding, running over him and dragging him a long distance, and bruising, breaking and mangling him so that he died.

It is conceded the Railroad Co. was engaged in interstate commerce, and the Employers' Liability law applies. And while it is not disputed the company was operating its trains at the time of the accident, without keeping a lookout ahead, that is, no one on the train saw the intestate before the accident, it is insisted that the company owed Thornton no duty to look out for his safety, and the company is not liable for his death.

A labored argument is made in an attempt to show from the proof that the Railway Company was not negligent in failing to keep a lookout ahead. Without discussing this question, we are content to say that there was material evidence showing that the company had an employee upon the engine, in a place where he could see at all times, and that he failed to see. The trial judge should not have taken the case from the jury, as he did, unless other reasons appeared, excusing the company from keeping a lookout ahead.

We do not think it necessary to detail the situation at the place of the accident. It is sufficient to say that the train was being operated outside the city yard limits, but to a siding where slag was being loaded. It made this trip daily, upon oral orders from the dispatcher at Chattanooga. The rules of the company provided that extra trains should be run only upon written orders, or by sending a flagman ahead, but we do not deem this important. Thornton had no way to anticipate a train running upon written or oral orders.

There was a sharp curve in the track at the place where the siding connected with the main track. The engine was approaching this curve, at a rate of about five miles an hour, leading from South Pittsburg, while Thornton and his companion were approaching the curve, going toward South Pittsburg, at a rate of about fifteen miles an hour. The companion first saw the approaching train and called to Thornton to jump. The companion jumped clear of the track and to a place of safety. Thornton jumped in front of his car when in about fifty feet of the approaching engine. He then turned and attempted to push the car upon the track and away from the engine in order to prevent a collision with the car. He pushed the car about fifty or sixty feet when the engine overtook him and ran over and destroyed him.

Upon these facts the trial judge directed a verdict, and Tommie E. Thornton, admrx., has appealed. The only question in this law suit is: Did the Railway Company owe a duty to Thornton to keep a lookout ahead in order to protect him, in case he was found in a position of peril?

The plaintiff has advanced the question of the assumption of risk, argues and cites numerous authority to the effect that employees of the Railway Company do not assume the risk of the negligent operation of the trains, only assuming such risk as is incident to the ordinary operation. If this was the controlling question, the court would be inclined to hold with plaintiff, because if the company owed a duty to Thornton to keep a lookout for him, then he could assume the employees operating a train which was running between three and five miles an hour, were keeping a lookout for him, and would not run over him. But the long line of authority cited, defining and dealing with the assumption of risk is not applicable if the Railway Com-

pany owed Thornton no duty to keep a lookout for him, for then, it was not guilty of negligence, and was only operating its train in the ordinary and usual manner, and it is the duty of employees, by reason of their contractual relation, to assume the risk of the ordinary and necessary operation of trains.

The defendant Railway Company cites a long line of authority, both State and Federal, in support of the proposition that the company owed this class of employees no duty to look out for them. We find it unnecessary to review these authorities, for the reason that the Supreme Court of the United States, which is a fountain of authority, decided on May 24, 1926, the case of Chesapeake & O. Ry. Co. v. Nixon, 26 Sup. Ct. Reporter, 495, (and the Supreme Court decided in prior cases) and held that the Railroad Co. owed a man engaged in the character of work Thornton was engaged in, no duty to look out for him. The accident in the Nixon case happened while the employee, who was an experienced section man, was going to his work on a three wheeled velocipede. The court said:

"If the accident had happened an hour later when the deceased was inspecting the track, we think that there is no doubt that he would be held to have assumed the risk, and to have understood, as he instructed his men, that he must rely upon his own watchfulness and keep out of the way. The Railroad Company was entitled to expect that self-protection from its employees. Aerkfetz v. Humphreys, 145 U. S., 418, 12 S. Ct., 835, 36 L. Ed., 758; Boldt v. Pennsylvania R. R. Co., 245 U. S., 441, 445, 446, 38 S. Ct., 139, 62 L. Ed., 385; Connelley v. Pennsylvania R. R. Co., 201 F., 54, 119 C. C. A., 392, 47 L. R. A. (N. S.), 867; Davis v. Philadelphia & R. Ry. Co. (D. C.), 276 F., 187; Pennsylvania R. R. Co. v. Wachter, 60 Md., 395; 4 Elliott on Railroads (3 Ed.), 1862. The duty of the railroad company toward this class of employees was not affected by that which it might owe to others."

We think this authority settles the matter, because the case is brought under the Federal Employers' Liability Act, Comp. St. 8657.

The action of the trial judge, therefore, was correct in dismissing the suit, and his judgment is affirmed.

Snodgrass and Thompson, JJ., concur.