# Hoover, Appellant, *v.* Beech Creek R. R.

*Negligence—Railroads—Fellow servants—Brakemen.*

A telegraphic dispatch was sent by the train dispatcher to the conductor and engineer of train No. 3, of which plaintiff's intestate was brakeman, requiring them to "wildcat to Newberry Junction ahead of train 39 and report." This order was delivered to conductor of train No. 3, at Jersey Shore before leaving that station. The conductor of train No. 3 testified that it was the usual custom to signal trains approaching from behind at the place where this accident happened, especially on foggy nights, by going back on the track and placing caps on the rails, and that plaintiff's intestate was just about to do this when the collision occurred, but waited a few minutes to fix his fires. In these few minutes the collision took place which killed plaintiff's intestate. *Held*, that the accident was caused either by the failure of the brakeman to put caps on the rails behind No. 3, as a signal to No. 39, or by the failure of fellow servants, the conductor and engineer, either to side track No. 3, or to give proper signals, and that in either case plaintiff was not entitled to recover.

Argued March 14, 1893.  Appeal, No. 5, Jan. T., 1893, by plaintiffs, Anna Alberta Hoover et al., widow and minor children of Samuel L. Hoover, deceased, from order of C. P. Lycoming Co., Dec. T., 1888, No. 58, refusing to take off nonsuit.  Before GREEN, WILLIAMS, MITCHELL, DEAN and THOMPSON, JJ.

Trespass for death of plaintiff's intestate.

At the trial, before IKELER, P. J., of the 26th judicial district, specially presiding, the evidence was to the following effect: The Beech Creek Railroad extends from Clearfield county to Jersey Shore, in Lycoming county.  The Fall Brook R. R. extends from a point in the state of New York to Newberry Junction, in Lycoming Co.  The trains of the Beech Creek Railroad run over that portion of the Fall Brook Railroad Company's track between Jersey Shore and Newberry Junction, by authority of a contract with the Fall Brook Company, the consideration being a specified share of the profits or remuneration of the traffic, but while the Beech Creek Company's trains were on

the tracks of the Fall Brook Company they were to be sub-
ject to the "reasonable police regulations" of the Fall Brook
Railroad. The Beech Creek trains between Jersey Shore and
Newberry Junction received their orders from the Fall Brook
dispatcher, as to the movements of their trains over that portion
of the road used in common. On the night of Sept. 20, 1887,
train No. 3, a freight train of the Beech Creek Railroad, arrived
at Jersey Shore late; it was ordered by the train dispatcher to
"wildcat" to Newberry Junction ahead of train No. 39, a Beech
Creek passenger train. Train No. 39 was also late at Jersey
Shore, stopped for orders, registered and received directions
from the dispatcher that there were no orders for it. It went
on according to the rules of the road, and near to Newberry
Junction ran into the rear of train No. 3, killing plaintiffs' in-
testate. Other facts appear by the opinion of the Supreme
Court.

The court entered a compulsory nonsuit, which they subse-
quently refused to take off, in an opinion filed, on the ground
that defendant was not liable for negligence of the train dis-
patcher of the Fall Brook Railroad.

*Errors assigned* were, (1) in entering nonsuit; (2) in refus-
ing to take it off.

*G. B. M. Metzger* and *H. H. Martin, J. J. Metzger* and *A. F.
Martin* with them, for appellant.

*M. E. Olmsted* and *S. R. Peale*, for appellee.
The argument is omitted because directed to the liability of
defendant for the negligence of the train dispatcher.

PER CURIAM, April 10, 1893:
The telegraphic order of the assistant superintendent of the
Fall Brook Company's Railway, to the conductor and engineer
of the train No. 3, of which the deceased was brakeman, re-
quired them to "wildcat to Newberry junction ahead of train
39 and report." This order was delivered to the conductor of
train No. 3, at Jersey Shore before leaving that station, and
was notice to him to keep out of the way of train No. 39 next
following. It was the duty of the men running train No. 3 to

look out for train No. 39, to keep out of its way, and to give whatever signals were necessary to prevent a collision. It was testified by Thomas, one of plaintiff's witnesses, and conductor of No. 3 train that it was the usual custom to signal trains approaching from behind at the place where this accident happened, especially on foggy nights, by going back on the track and placing caps on the rails, and that Hoover was just about to do this when the collision occurred, but waited a few minutes to fix his fires first. In those few minutes the collision took place. Now, if Hoover ought, as brakeman, to have put caps on the rails behind No. 3 as a signal to No. 39, and he failed to do so, the collision was the result of his own negligence and there can be no recovery. If the conductor and engineer failed either to side track No. 3 or to give proper signals, the collision was the result of the negligence of Hoover's co-employees, and in that event also there can be no recovery. The duty of avoiding any collision with No. 39 rested upon the men in charge of No. 3, and for the neglect of that duty by any of them the defendant is not responsible.

Judgment affirmed.