# CHARLESTON

JONES, ADMR., V. VIRGINIAN RAILWAY CO.

Submitted September 2, 1914.   Decided September 2, 1914.

1. MASTER AND SERVANT—*Injury to Railroad Employe—Contributory Negligence.*

    Knowing the dangers incident to railroad yards in the night time, where cars are continuously in motion day and night, an employee who uses the yards in the course of his employment must constantly exercise sufficient care to ensure his own personal safety, and not rely solely on signals by bell, whistle or light; and if injured while therein by the tender of a reversed engine, the presence of which he was at the time and place of impact anticipating, but who when hit was observing the approach of a train on another track which he knew could not harm him, he can not, because of his own negligence, recover for the injuries inflicted. Under such circumstances, the only duty the master owes his employee is to exercise reasonable care for his personal safety. (p. 669).

2. SAME—*Injury to Railroad Employe—Contributory Negligence— Right of Recovery.*

    A railroad yard, where trains, cars and engines are continuously in motion to and fro day and night on the interlacing tracks, is essentially a place of constant danger, of which employees are duly cognizant; and duty to themselves requires their unremittent care and prudence when using the yard to observe such movements in order to avoid injury to themselves, and, if negligent, they can not recover, though no warning by bell or whistle or light be given of such movements. (p. 669).

3.  SAME.

    If guilty of negligence directly contributing to his injury, a servant can not recover from the master.  (p. 669).

4.  SAME—*Injury to Railroad Employe—Switchyard Operation.*

    Employees engaged in switching cars and engines in railroad yard may reasonably assume that co-employees, familiar with dangers incident thereto, will, when using the yards for their own convenience, exercise necessary and reasonable diligence to protect themselves from such perils as may reasonably be expected therein. (p. 669).

5.  SAME—*Injury to Servant—Switchyard Operation.*

    The master owes no duty to warn employees—by bell, whistle or light—of dangers in railroad yards, of the existence of which they are fully cognizant, as they owe themselves the duty of constant vigilance to avoid the perils incident to the use to which such yards are devoted.  (p. 669).

6.  SAME—*Injury to Servant—Assumption of Risk—Dangerous Occupation.*

    One who engages in the performance of services, of the inherently dangerous character of which he is fully aware, assumes the risks ordinarily incident thereto, and, if negligent, can not recover for injuries inflicated while so engaged.  (p. 669).

7.  SAME—*Existence of Relation—Termination.*

    The relation of master and servant is not dissolved by mere cessation of duties assigned, but continues such reasonable time thereafter as will afford the servant opportunity to reach a place of safety from perils of the employment.  (p. 675).

Error to Circuit Court, Mercer County.

Action by P. Jones, administrator, against the Virginian Railway Company.  Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded.*

*G. A. Wingfield* and *Brown, Jackson & Knight,* for plaintiff in error.

*Sanders & Crockett* and *John R. Pendleton,* for defendant in error.

LYNCH, JUDGE:

To a judgment in favor of the plaintiff the defendant obtained a writ of error.  James W. Jones, the plaintiff's son

and intestate, was struck by the tender of a moving engine and killed in the yards of the defendant company. He was a brakeman on a coal train drawn by engine 434 from Page to Princeton, where it arrived between three and four o'clock A. M. January 23, 1912. At the west end of the yard the train crew, having served sixteen consecutive hours, was necessarily relieved from further duty, and the yard crew took the train in charge, and, after placing the cars composing it upon one or more of the fourteen interlacing tracks and connecting switches, as required by the rules of the company, shifted the engine onto the main line at the opposite end of the yard, in process of delivery to the round-house for inspection and repairs. While backing westward on the main line towards the round-house in the usual manner and according to the customary procedure, the tender collided with and killed Jones and seriously injured Easter, also a brakeman and at the time of the injury Jones' companion. Jones and Easter left the train at the west end of the yard, but, as it passed caught the caboose and rode on it until it reached its place of lodgment on the inner eighth track from the main line, when, having washed and changed their clothing, as was the custom, according to Easter, they started on foot across intervening tracks towards the main line and in the direction of the passenger depot. For eighteen months both of them had been in defendant's employment, much of the time as brakemen. They knew the yards were necessarily dangerous; that they were in continuous use, day and night; that cars and engines were constantly in motion, shifting and switching incessantly on all parts of the large yard; that cuts of cars were to be found at different parts thereof, and that the custom was to disconnect the engines from the incoming coal trains in some part of the yard, shift them from track to track until they reached the main line, and thence to run over that line to the round-house. Their familiarity with these conditions, customs and procedure is abundantly established by proof, if proof were necessary for that purpose. In fact, Easter admits he and Jones anticipated the appearance of the engine and tender on the main line at the time he and Jones reached it; for he says immediately before the collision

they looked for the engine at that point, but did not see or hear it.

As a basis for recovery, the second count of the declaration, on the averments of which plaintiff seems to rely, avers defendant's duty required it to sound a bell or whistle and keep a light on the forward end of the advancing engine and tender, and that, as a result of its failure to observe these legal requirements, Jones was run over and killed. By defendant's demurrer and plea, we are directly confronted with the inquiry whether, under the circumstances of this case, a breach of the duty averred is, in the absence of statutory requirements, such negligence on the part of the defendant as will sustain the judgment complained of.

Repeatedly have this and other courts held that the duty imposed by statute to sound a bell or whistle when approaching a public crossing does not require a railroad company to give such warning elsewhere than at the places so designated; because they are not intended to afford protection to employees of the operating company, but to persons who of right may use the railroad tracks as parts of the public highway. "The statute (Code, ch. 54, §61), requiring a bell to be rung or a whistle to be blown at crossings, is designed for those passing over the track at such crossings. not for those using the track elsewhere for their convenience as a footpath". *Spicer* v. *Railroad Co.*, 34 W. Va. 514. As stated in the opinion, Spicer was an employee, though perhaps not then engaged in the performance of the duties assigned to him. "Yet he was fully aware of the deadly and dangerous character of the yard wherein he was walking when hit and killed". The same holding is found in *Huff* v. *Railroad Co.*, 48 W. Va. 45. Though in *Melton* v. *Railroad Co.*, 64 W. Va. 168, the person injured was a trespasser, the court said: "Signals or lights or watchmen are not required on a backing train elsewhere than at public crossings to warn trespassers using the track for their own convenience as a footpath".

A railroad yard, with numerous tracks connected by switches, is essentially a place of danger, even in the day time. Therein trains and engines are in constant motion at all times during the day. Of the dangers incident to the use

of the yards for railroad purposes, no one is better advised than the employees whose duty requires them to be in or about the yard, or to pass through or over it. They know the danger, and that their safety therein depends more upon their own watchful care and prudence than upon the blowing of a whistle, the sounding of a bell, or the presence of a light on or about any part of the car. And we find in *Railroad* v. *Belcher,* 107 Va. 340, "a railroad company does not owe to its employees engaged in its yards, over which engines are constantly moving, the duty of sounding whistles, ringing bells, or keeping a constant lookout to warn them of dangers of which they already have knowledge. Such employees are exposed to more than ordinary peril, and should be on the alert and vigilant to guard against injuries from the movement of engines and cars always to be expected. Those in charge of the switching engines in a yard have the right to assume that employees on the yard, who are familiar with the dangers of the place, will look out for themselves, and will not fail to leave a place of danger in time to avoid injury. There can be no recovery by an employee who while on a railroad yard negligently steps onto a track on which a switch engine and cars are moving in his direction and who is thereby injured in consequence of inattention to his surroundings".

So in *Pittard* v. *Railroad Co.,* 107 Va. 1, it is said: "A railroad yard is a place of ceaseless activity, where cars are being shifted and engines moved, and those engaged therein are exposed to more than ordinary dangers and should be on the alert to guard against such dangers. The sounding of whistles and the ringing of bells at such places is not essential for the protection of employees but would tend to increase the confusion. In the case at bar, the employee was killed in a railroad yard; but the evidence fails to establish negligence on the part of the company". Likewise in *Railroad Co.* v. *Lee,* 110 Va. 305, it is said: "It is unnecessary to ring a bell, sound a whistle or display a light, in order to give employees on a railroad yard warning of dangers with which they are already acquainted and of which they have knowledge". So, it is held in *Aerkfetz* v. *Humphreys,* 145 U. S. 418, that a track repairer who was injured while in the dis-

charge of his duties in the station yard must take care and exercise diligence to avoid accidents from trains, and the duty of the company to him is not measured by its obligation to a passenger when on or crossing the tracks except for wanton and willful negligence. In the opinion it is said: "The ringing of bells and the sounding of whistles on trains going and coming, and shifting engines moving forwards and backwards, would have simply tended to confusion. The person in direct charge had a right to act on the belief that the various employees in the yard, familiar with the continuously recurring movements of the cars, would take reasonable precaution against their approach". *Riccio* v. *Railroad Co.,* 189 Mass. 358.

In *Crowe* v. *Railroad Co.,* 23 N. Y. S. 1100, plaintiff was injured while engaged in the yards of the company in the night time in repairing one of the forty or more tracks therein. The car which caused the injury had no light on it, and no notice was given of its approach. But plaintiff knew that cars might be expected at any moment; that it was not customary to give any warning of their approach; that it required constant watchfulness and vigilance to avoid collisions; and it was held that a railroad company is not negligent in not requiring lights to be placed on all cars moving in the yards for the protection of employees, since to do so would require so many men and lanterns and so much time as to be impracticable. In the opinion the court said: "Great care and precaution is required on the part of the railroad company when it is moving cars at places where the general public have the right to pass; but a different rule obtains in the company's yards, where cars are being distributed and trains made up. The employees about such yards understand the situation. They know that cars are to be moved without notice of their approach, and they assume the risks incident to the business as thus conducted".

In determining the liability of railroad companies for injuries to their employees while actively engaged in their employment, stress is ordinarily laid on the knowledge of the custom prevailing in the yards in the handling and movement of trains. As held in *Schaible* v. *Railroad Co.,* 97

Mich. 318, it is the duty of a section hand who is at work at a side track in the yard of a railroad company, who knows it is customary to shunt or kick cars along the track in the yards unattended for the purpose of making up trains and the cars have just been run onto the track where he is at work, to keep a lookout for moving cars, and if he fails so to do and is injured by a car coming down upon him unattended he is guilty of such contributory negligence as will bar recovery.

A trackman who has had experience and is familiar with the operation of trains, and who knows that both extra and special trains frequently run over the road, must keep a lookout so far as practicable for all trains. *Hoffer* v. *Railroad Co.,* 110 N. W. (Ia.) 446; *Olsen* v. *Railroad Co.,* 38 Minn. 117; *Railroad Co.* v. *Wachter,* 60 Md. 395; *Connelley* v. *Railroad Co.,* 201 Fed. 54; *Railway Co.* v. *Gesswine,* 144 Fed. 56. One whose duty it is to repair tracks at a crossing and to keep them free from accumulation of dirt, and who knows that engines and cars are almost constantly passing, is negligent if he fails to use his senses, and relies wholly on warnings by bell on approaching engines. *Railroad Co.* v. *Burns,* 21 Oh. Cir. Ct. 276. Where, as in this case, plaintiff is familiar with the usages and dangers of a switch yard, and steps upon a track on which he may and does anticipate the presence of a moving train or engine at any time, and fails to look or listen, he can not recover for injuries sustained, any more than a traveler upon a highway who fails to look and listen before he attempts to cross the tracks at a public crossing. *Loring* v. *Railroad Co.,* 128 Mo. 359.

In *Connelley* v. *Railway Co., supra,* right of recovery for the killing of a track-walker who, while diligently engaged and about to complete the performance of his usual duties, was so enveloped with steam emitted from an engine on a nearby track that he could not be seen from the engine which caused his death, was denied. While the brakeman on the engine kept a lookout, no bell was rung or whistle sounded, and a light would not have afforded any warning. The court said where the occupation is one of constant peril "the duty of self-preservation has to rest on them (the employees),

for no adequate protection, other than self-protection, can be afforded them''. So, in *Railway Co.* v. *Gesswine, supra,* the court, Judge Lurton delivering the opinion, held that if section men ''are hurt while the trains are being managed and operated in the usual and ordinary way they can have no just ground of complaint'', on the theory of the assumption of the risks incident to all hazardous employments. See also *Bancroft* v. *Railroad Co.,* 67 N. H. 466; *Morris* v. *Railroad Co.,* 184 Mass. 368; *Carlsen* v. *Railroad Co.,* 120 Mich. 481; *Railway Co.* v. *Hester,* 64 Tex. 401; *Riccio* v. *Railroad Co., supra; Moorehead* v. *Yazoo Railway Co.,* 36 So. (Miss.) 151.

Was decedent guilty of contributory negligence? A moment befort the impact of the tender, Easter says, he and Jones were observing the second incoming coal train drawn by engine 503, and which at the time was a short distance from the place of injury, and in front of which they passed onto the main track, when they were hit by the tender of engine 434. They knew train 503 was following them from Page, and that it would reach the yards about the time of its actual approach. They evidently did not stop until 503 passed on track number 3, for but an instant afterward they were struck by 434, then on the main line. They say they looked and listened for it, but did not see or hear it. But it is proper to infer that they looked and listened casually only; for it is apparent from the testimony of Easter that they simply turned their heads in the direction from which they expected it. But the engine driver on the incoming train saw both Easter and Jones, and the engine which struck them. He saw them and the engine by aid of lights at and near the depot, all of which were then burning as usual, but none of which was observed by Easter, if his statement is to be believed.

Both Jones and Easter carried lanterns furnished by defendant. There was the usual head-light on engine 503. True, they say the night was dark, and that a cut of cars was standing on track number 2, about thirty feet from them, in the direction from which the engine and tender were approaching. The darkness, however, added additional emphasis to the necessity for the exercise of care on their part.

But, as stated, both of them were intently observing the movements of the incoming coal train, on which Easter's brother was employed as a brakeman. Their effort to observe the engine and tender was, judging from the testimony of Easter himself, merely perfunctory. To use his own language, Easter says, in answer to the question, ''You said that when you got approximately to the main line track you thought you heard a train coming up behind you? Yes, sir, we heard a train coming up from the west. You were standing at that time about on the main line track? No; we were walking along, when we heard this train, crossing the tracks; and we heard the train when we were reaching something near the main line—we heard the train coming in from the west. And you were looking down towards the west at that train? We turned to look at this train coming in from the west. We were walking along. I guess we kinder checked up when we turned to look at this train. And at the time you were struck you were looking to the west? Yes, sir. Weren't you expecting that train in from the west? Yes, I knew it was following us. Yes, sir''. If, as he says, he and Jones were looking westward at the incoming coal train when struck by the tender coming from the east on the main line, they must then have been either on or in the act of going onto the main line, having passed in front of 503 at the instant of impact with the tender on engine 434. How then could it be possible that, with the head-light on 503 and the electric lights near the depot, though the latter may have been, as Easter says they were, 400 feet distant, and with burning lanterns in their hands, Easter and Jones failed to observe the oncoming engine and tender on the main line? It is not readily conceiveable, even admitting that the night was densely dark. The fireman on 503 saw them and the engine by means of the depot lights, though much further from them than were Jones and Easter. But it is argued that a cut of cars standing some 25 or 30 feet distant obstructed the lights. Easter, however, says he saw no lights at the depot or elsewhere. But the fact that he was injured at the same time, to recover for which he has also sued, may have prevented his seeing what others plainly saw. It may be argued, however, to the con-

trary, that, if by means of these lights opportunity was afforded Easter and Jones to see the engine, the crew in charge had the same opportunity of seeing him. But it is clearly shown the engineer and fireman occupied positions on the side opposite that from which Jones and Easter approached the main line, and were not aware of their presence near the track on which the engine was moving towards the round-house.

Under these circumstances, is not the inference unavoidable that the accident would not have occurred had the two men injured been as intent on looking for the engine whose movements they could anticipate, with the custom of the yard in mind of which they were fully cognizant, and whose movements they knew would soon bring it on the main line they were about to cross, and which movements did bring it there, as they were observing the movements of train 503? For, as Easter admits, we repeat, at the very instant of the impact they were engaged in looking at the train coming from the west on the third track from the main line, while the engine was on the main line, both of them proceeding in the same direction. Under these circumstances, we think the negligence of Jones obviously precludes recovery, even conceding defendant's duty required the sounding of bell or whistle and the display of a light on the tender, none of which, according to the authorities cited, was required.

Conceding the relation between Jones and the railway company, at the moment of the injury, to have been that of master and servant, as under the authority of *Kinney* v. *Relief Association*, 35 W. Va. 385, it really was, the conclusion necessarily follows, under the repeated decisions of this court, that Jones and those in charge of engine 434 when the collision occurred were fellow-servants. If so, then for another reason there was no liability on the company by reason of the absence of the light, if required by the company's rules. For, conceding that the rules prescribed required lights on the tender and that no light was there, yet if the injury was inflicted by reason of the negligence of a fellow-servant the employee can not recover therefor, as held in the following cases: *Hoover* v. *Railroad Co.*, 154 Pa. 362, where a train crew failed to give proper signals to a train following it, the

first train having broken in two, causing a collision; *Jenkins* v. *Railroad Co.*, 18 S. E. 182; *Greenwald* v. *Railroad Co.*, 49 Mich. 197, where a fireman omitted to sound the bell or whistle as required: *Jackson* v. *Railroad Co.*, 43 W. Va. 380, where conductor injured brakeman by his negligence in signalling to back up train; *Niles* v. *Railroad Co.*, 43 N. Y. S. 48, where engineer ran his train past a block signal so that it came into collision with another standing on the track; *Railroad Co.* v. *Henderson*, 37 Oh. St. 549, where trainmen were injured through collision resulting from negligence of employee whose duty required him to flag an approaching train; *Ford* v. *Railroad Co.*, 117 N. Y. 638, where employees disregarded rules regulating loading of cars; *Byrnes* v. *Railroad Co.*, 113 N. Y. 251, where the injury was caused by the negligence of employees in making inspection of loaded cars as required by the company's rules; *Rutledge* v. *Railroad Co.*, 123 Mo. 121, where brakeman was injured by a sudden check in movements of the car by a signal given contrary to the custom and use; *Railroad Co.* v. *Sipes*, 23 Col. 226, where the injury was occasioned by the conductor's negligence in failing to observe a rule of the company with respect to closing switches; *Railroad* v. *Poirier*, 167 U. S. 48, where collision was caused by the conductor's disregard of rule as to running of train closely behind another; *Davis* v. *Railroad Co.*, 37 N. Y. S. 157, where brakeman was injured by a switch left open by the conductor; *Moeller* v. *Railroad Co.*, 43 N. Y. S. 603, where car repairer was injured by fellow-servant's failure to put out signal flag; *Enright* v. *Railroad Co.*, 93 Mich. 409, where the engineer disregarded rule requiring freight trains to approach stations under full control; *Peterson* v. *Railroad Co.*, 67 Mich. 102, where the signal flag was not placed as required by rules to protect car repairers; *Renfro* v. *Railroad Co.*, 86 Mo. 302, to same effect; *Whalen* v. *Railroad Co.*, 114 Mich. 512, where the injury was caused by the failure to pull automatic cord when brakes were whistled for; *Lunquist* v. *Railroad Co.*, 65 Minn. 387, where warning was not given as prescribed by rules; *Wright* v. *Railway Co.*, 80 Fed. 260, where injury was caused by negligence of conductor and engineer in not ringing the bell at crossings and in running at excessive speed;

*Healey* v. *Railroad Co.,* 20 R. I. 136, where brakeman on one train was injured by a collision resulting from negligence of engineer of another train in running contrary to specific orders; *Lime Co.* v. *Richardson,* 95 Va. 326, where member of gang engaged in moving cars on siding was injured by negligent failure of foreman to give warning of approach of car from behind. See also *Railway Co.* v. *Hall,* 78 Tex. 657; *Rex* v. *Car Co.,* 43 Atl. 246; *Drake* v. *Railroad Co.,* 30 N. Y. S. 671; *Tully* v. *Steamship Co.,* 42 N. Y. S. 29.

Again, did plaintiff prove any rule prescribing a light, as he contends? The only evidence of any such requirement is a diagram of a tender and a light at letter A, with "notes" stating: "The diagrams are intended to illustrate the general location of train signals, not the manner in which they are to be attached. Combination lamps with four illuminated colored faces are represented in diagrams. Engine moving backward by night without cars or at the front of a train pulling cars, with light at "A". Except the testimony of Easter, and one or two other witnesses examined to the contrary, there is no evidence to show a light was used at the place designated, for yard purposes. Though, as we may assume, Easter was at times engaged as brakeman in the rail road yards, he does not say he placed one there. He contents himself with the statement that he had seen lights on the tender when engaged in shifting and switching cars, while the clear preponderance of evidence shows no such use, and, as stated by the authorities cited, such use is impracticable and the requirement unenforcible under conditions ordinarily obtaining in busy railroad yards. Probably what the witness saw and all he saw were lanterns, such as he and Jones carried at the time of the accident, in the hands of the brakemen while working in the yards. The conclusion is reasonable that the rule was intended as a protection against injuries to persons using highways as at public crossings or other places where persons may lawfully and usually be expected to pass or assemble, and not as a matter of protection to employees. But, as we have seen, if the lights were not on the tender, in violation of the rule for which plaintiff contends, the omission

was the negligent act of a fellow-servant, precluding recovery.

For reasons assigned, we reverse the judgment, sustain the demurrer, and remand for a new trial.

*Reversed and Remanded.*