# CHARLESTON.

### EASTER v. VIRGINIAN RAILWAY CO.

### Submitted May 6, 1915.   Decided June 1, 1915.

1. APPEAL AND ERROR—*Petition—Sufficiency.*

    A petition for appeal or writ of error, accompanied by the record, is sufficient if it states the case, assigns error and points out the decree or judgment complained of.   Its brevity is not objectionable. (p. 387).

2. MASTER AND SERVANT—*Injuries to Servant—Federal Employers' Liability Act—Declaration—Sufficiency Against Demurrer.*

    A declaration against a railroad company, in an action by one of its employees for personal injury, received while employed in interstate traffic, is not demurrable because its averments show that the injury was caused either by the negligence of a fellow servant or by the combined negligence of himself and a fellow servant.   (p. 387).

3. COURTS—*Master and Servant—Federal Employers Liability Act—Operation—Enforcement.*

    In all cases to which it is applicable, the Federal Employers Liability Act supersedes state statutes and the common law; and federal and state courts are given concurrent jurisdiction for its enforcement.   (p. 387).

4. MASTER AND SERVANT—*Injuries to Railroad Employe—Employers Liability Act—Negligence of Fellow Servant—Contributory Negligence.*

The act imposes liability upon the carrier for the death or injury of its servants, notwithstanding it may have resulted wholly from the negligence of a fellow servant, or from the combined negligence of a fellow servant and the deceased or injured party.   (p. 387).

5. SAME—*Injuries to Servant—Federal Employers Liability Act—Contributory Negligence—Mitigation of Damages.*

When actionable negligence is shown, contributory negligence is no defense, but should be considered by the jury in mitigation of damages only.   (p. 387).

6. SAME—*Injuries to Employe—Federal Employers Liability Act—Defenses—Negligence of Fellow Servant.*

Although a railroad company is under no duty to adopt rules, requiring its employees engaged in shifting engines and cars upon its yards at night, to give warning to other employees by ringing bells, blowing whistles, or by signal lights at the rear of backing engines, *Jones* v. *Virginian Railway Co.*, 74 W. Va. 666, 83 S. E. 54, still, if it does adopt and promulgate a rule, unambiguous in its terms, requiring a light to be carried on the rear of engines "running backward by night, without cars or at the front of a train pulling cars," and the employees understand such rule as applying to the yards as well as to the main line, and it has become the custom among them to carry such light at night, and an employee, passing over the yards at night, is struck and injured by a backing engine, on which a co-employee had neglected to place a light, the company can not escape liability by proving that the rule was not intended to apply to its railroad yards, if the absence of such light was the sole, or a contributing cause of the injury.   In such case the failure to carry a light is the negligence of a fellow servant, and is actionable under the federal act.   (p. 392).

7. SAME—*Injuries to Servant—Continuation of Relation—Trainmen.*

The relation of master and servant, between a railroad company and one of its trainmen, does not necessarily terminate the instant the train reaches its destination on the company's yards, or the servant ceases to labor, but continues for a reasonable time thereafter to enable such employe to wash himself and change his soiled clothing, in the caboose, provided with the conveniences therefor, before going to his lodging place, such being the custom of trainmen.   (p. 393).

8. SAME—*Continuation of Relation—Reasonable Time—Question for Jury—Injury to Trainmen—Instructions.*

What is a reasonable time is generally a question of fact for the jury to determine from all the facts and circumstances of the particular case; but when there is no evidence tending to prove the time

reasonably required for a trainman to make his toilet, preparatory to leaving the train for his lodging place, and his evidence proves that he consumed no more time than was required for that purpose, the fact that about one hour had elapsed between the arrival of the train and the accident, does not warrant the inference that the time was unreasonable; and the giving of an instruction which assumes the existence of the relation of master and servant, at the time of the accident, is not reversible error. In view of the established facts, it can not be said, as matter of law, that an hour was unreasonable time.  (p. 393).

9. APPEAL AND ERROR—*Ground for Reversal—Instructions.*
   The giving of an instruction presenting an abstract legal question is not necessarily cause for reversal.  (p. 395).

10. SAME—*Interest—Ground for Reversal—Excessive Interest.*
   In tort actions, interest runs only from the date of the judgment, and it is error to give judgment for interest from the date of the verdict; and, if such excessive interest exceeds one hundred dollars, it is reversible error.  (p. 396).

   (POFFENBARGER, JUDGE, dissenting in part.)

Error to Circuit Court, Mercer County.

Action by W. H. Easter against the Virginian Railway Company.  Judgment for plaintiff, and defendant brings error.

*Reversed and rendered.*

*G. A. Wingfield* and *Brown, Jackson & Knight,* for plaintiff in error.

*Samuel W. Williams* and *John R. Pendleton,* for defendant in error.

WILLIAMS, JUDGE:

Plaintiff was employed as brakeman on defendant's freight train running from Page to Princeton, both in the State of West Virginia.  The train pulled into the railroad yards at the latter place about 3:15 A. M., on the 23rd of January, 1912.  Defendant is an interstate carrier, and the train was made up of carloads of coal consigned to points in the state of Virginia.  Defendant maintained extensive yards at Princeton, consisting of about fourteen side tracks about one mile long, besides the main line.  According to the custom of the railroad company the cars billed to points farther east were

there shifted and collected into other trains. The train on which plaintiff was braking being employed in interstate traffic, the crew in charge of it were bound to observe the federal statute, prohibiting employes from serving more than sixteen hours out of twenty-four, and the sixteen hours being up, at 3:15 o'clock A. M., just as the train had entered the yards, they turned the train over to another crew. Plaintiff was on the engine and, as the train entered the yard, got off, while the train was still moving slowly, and waited until the caboose came up and then got on it for the purpose of washing and changing his clothing. A fellow brakeman by the name of Jones was also in the caboose. After plaintiff had completed his toilet they started across the railroad yards, and, just as they approached the main track, were struck by the tender of an engine running backward down the track to the roundhouse. Jones was killed and plaintiff was severely injured. There was no signal light on the back end of the tender, and no warning was given of the engine's approach, either by ringing a bell or sounding a whistle. The night was dark, and plaintiff says he knew the custom was to detach the engine from the train, as soon as it arrived, and switch it over to the main track, at the east end of the yards, and back it down to the roundhouse, and was, therefore, expecting it; that it was the duty of the crew in charge of the train to take the engine to the roundhouse, if they were not required to stop work on account of the sixteen hour law; that just as he and Jones reached the track he looked up the track for the engine and did not see it; that he then turned his head to see if he was in danger of an engine and train, nearby, which he heard approaching from the west, on another track, and was instantly struck by the tender of the backing engine, and rendered unconscious; and that he did not hear the backing engine on account of the noise from the other engine nearby. The engineer on the incoming train testified that he saw plaintiff and Jones when they were struck, and saw the backing engine, beyond them, by the light shining from the depot and from a street lamp not far away. Plaintiff recovered a judgment for $7,500 and defendant brings-error.

Jones's administrator sued for damages for his unlawful death, and that case was reviewed by this court, *Jones* v.

*Virginian Ry. Co.,* 74 W. Va. 666, 83 S. E. 54, but the decision in that case does not control this case. It did not appear that Jones was engaged in interstate traffic; hence that case was determined according to the state law, and not according to the federal statute concerning the liability of interstate carriers for injury to their employees.

Before considering the errors assigned by defendant, we will dispose of a preliminary motion, made by plaintiff, to dismiss the writ of error. The ground of the motion is that the petition does not sufficiently assign error. It is brief, but we think it fully complies with Sec. 8, Ch. 135, Code 1913, and with Sec. 1 of Rule I, of this court. The statute simply says the petition shall assign error, and the rule of court only requires that it shall "briefly state the case and must assign error, naming the particular decrees or judgments complained of and the date of their rendition." The rule expressly forbids argument in the petition, but provides that a separate note of argument may accompany it. It is a desideratum of this court that the petition be brief, provided however, it calls attention to the particular matters complained of, and refers to the places in the record where they may be found. The record in this case is exhibited with the petition, and the petition points out the matters complained of, gives the date of the judgment and calls attention to the rulings of the court upon certain instructions, referred to by their record numbers. Its brevity is no objection, and the motion will be overruled.

The first error assigned by defendant is the overruling of its demurrer to the declaration. It contains three counts, and the demurrer is to each separate count as well as to the entire declaration. Each count should state a good cause of action and be complete within itself. One count can not be supplemented by reading into it the averments contained in another. Hence, if any count is bad the demurrer to it should have been sustained. But if any one of the counts is good, and the evidence on which the case was tried is admissible under it, the error, if any, in failing to sustain the demurrer to the bad counts would not be prejudicial. The third count avers that defendant was an interstate carrier and that, at the time of his injury, plaintiff was employed by it in interstate commerce; that he was employed as brakeman, and, in

discharging his duty as such, was frequently required to cross to and fro over defendant's numerous tracks upon its yards at Princeton; that it was defendant's duty "to use due and proper care and precaution in the running, control, shifting and management of its said trains, locomotives, engines, tenders and cars, on its said yard and side tracks and main track at Princeton, West Virginia, and to provide lights and signals on the same in the night time, and to sound warning of their approach, so as to prevent the said plaintiff from being run into and struck by the same, and to give said plaintiff warning of the approach of the same." The breach of duty causing plaintiff's injury was alleged to be the negligent and careless running of an engine and tender backward on a dark night over one of the tracks of defendant's yards at Princeton, and against plaintiff, while he was crossing the yards by the usual and customary way, going from the train on which he had been brakeing to his home, without having a light of any kind on the front end of the tender and without giving plaintiff any notice of its approach by blowing the whistle or ringing the bell. Measured by the rule respecting an interstate carrier's liability for injury to one of its employes engaged in interstate commerce, this count in the declaration is certainly good. Even though, as a general rule, a railroad company may not be required to provide for the carrying of lights on the rear of its engines backing over its yards at night, for the protection of its employes, as was held in *Jones, Adm'r* v. *Virginian Railway Co.*, 74 W. Va. 666, 83 S. E. 54, wherefore the omission to do so would not, in all cases, constitute negligence, still there may be circumstances and conditions making it negligent not to do so in some cases, and plaintiff had a right to show that, in this particular case, a reasonable regard for the safety of the employes made it necessary. Moreover, the failure to have a light on the backing tender is not the sole act of negligence averred; the failure to sound a bell or to give any other signal of warning is also alleged as negligence. True, the latter averment shows negligence of a fellow servant only, for which the master is not liable under the common law; but the rule is otherwise under the Federal Employers Liability Act. By that act the common law respecting a carrier's liability to one of its employes,

for injury received while engaged in interstate traffic, is altered in many respects, and materially so with regard to the doctrine of assumption of risk and contributory negligence. Cases falling under that act are governed by it; it supersedes the state law, in all cases wherein it is applicable. *Illinois Central R. Co.* v. *Nelson,* 203, Fed. 956; *Mondou* v. *New York &c. R. Co.,* 56 L. Ed. 328; *Seaboard Air Line Ry.* v. *Horten,* 58 L. Ed. 1062; *St. Louis &c. Ry. Co.* v. *Hesterly, Admr.,* 57 L. Ed. 1031; and *Michigan Central R. Co.* v. *Vreeland,* 57 L. Ed. 417. And Sec. 6 of the act, as amended, April 5, 1910, confers on the state courts concurrent jurisdiction with the federal courts in its enforcement. *Illinois Central R. Co.* v. *Nelson, supra; Mondou* v. *New York &c. R. Co., supra;* and *Seaboard Air Line Ry.* v. *Horten, supra.* The negligence of a fellow servant does not, under the federal act, as it does under the common law, relieve the carrier from liability; and, while contributory negligence is proper to be considered in mitigation of damages, it does not defeat a plaintiff's action. *Southern Railroad Co.* v. *Gadd,* 207 Fed. 279, 58 L. Ed. 1099; *Missouri &c. R. Co.* v. *Poole,* (Tex.), 123 S. W. 1176; *Colasurdo* v. *Central R. Co.,* 180 Fed. 832, affirmed by C. C. A., 192 Fed. 901; *Missouri &c. R. Co.* v. *Bunkley,* (Tex.), 153 S. W. 937; *Cain* v. *Southern R. Co.,* 199 Fed. 211; *Grand Trunk Western R. Co.* v. *Lindsay,* 201 Fed. 836; *McDonald* v. *Railway Transfer Co.,* 121 Minn. 273; *Louisville & N. R. Co.* v. *Wene,* 202 Fed. 887; and see notes, collected on the case of *Lamphere* v. *Oregon R. & Nav. Co.,* 47 L. R. A., (N. S.), page 61. Hence, even though it appears from the declaration that the injury resulted wholly from the negligence of a fellow servant, or from the combined negligence of plaintiff and a fellow servant, it does not make the declaration bad. An employe engaged in interstate traffic does not assume the risk of injury resulting from such negligence.

All the evidence being properly admissible under the third count of the declaration, it is needless to inquire whether the demurrer to the first and second counts were improperly overruled or not. No prejudice resulted from such ruling, even if it was technically erroneous.

Notwithstanding the Federal Employers Liability Act has greatly extended an interstate carrier's liability, negligence

is still the basis of an action for injury, but the negligence may be by its agent, officer or servant; it is not confined to the carrier, or its vice-principal. The act makes it liable for injury or death to an employe, "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

In view of the law, as declared in the *Jones Case,* 74 W. Va. 666, 83 S. E. 54, that a railroad company is under no obligation to warn its employees against dangers, upon its yards, at night, by means of headlights, blowing whistles or ringing bells, counsel for defendant insist that no negligence is shown for which it is liable under the federal act. They contend that the proof shows plaintiff's injury resulted solely from his own negligence. We do not think so, for the following reason. Notwithstanding defendant was under no duty to provide signal lights to be carried on the tenders of backing engines at night, there is a good deal of evidence tending to prove it had adopted and promulgated a rule requiring it to be done, and that its employees were endeavoring to comply with it; that it was the custom to carry such light at night on the yards; and that the failure to do so on the occasion in question was the contributing, if not the principal, cause of plaintiff's injury. So that, the failure by an employee to observe a rule, which it had become the custom of the employees to obey, causing injury to a co-employee, even though the law did not require such a rule, is an act of negligence of a fellow servant, rendering defendant liable. It presents a different case than would be made by the facts, if no rule had been established in respect to warning signals. If there had been no rule, plaintiff could not have been misled by the absence of a light on the tender, and he might have used more care for his own safety. A picture from defendant's rule book, published for the guide of its employees, was introduced as evidence. It represented the rear end of a tender, upon the top of which was a yardman's lantern, at a point marked by the letter "A", and underneath the picture were printed these words: "Engine running backward by night, without cars or at the front of a train pulling cars. White light at A."

To prove this was not a rule of the yards, defendant introduced as a witness A. T. Woodruff, its train rules examiner and inspector, who testified that the rule was not applicable to engines running on the yards, disconnected from trains, and that it would not be a violation of the company's rules not to use a light in such case; and another witness, Mr. Hartigan, testified that the rules were gotten up to conform to the General Managers Association of the United States. It will be observed, however, that there is nothing in the language of the rule which confines its application to engines pulling trains; the language is general, and comprehensive enough to include all engines running backward at night, whether pulling trains or not, and whether on the main line or on the yards. If the rule was intended to have a limited application it should have so stated. Plaintiff introduced a good deal of evidence tending to prove that the railroad employees understood the rule as applying to empty engines running backward over any part of the tracks, upon the yards as well as upon the main line, and that they endeavored to comply with it; that it was the custom to use such light on the yards. The jury had a right to believe, and no doubt did believe from the evidence, that it was the custom to use a light, although there is evidence that it was sometimes neglected. It is clear, we think, that the custom was not established by the employees on their own initiative, but that it grew out of their compliance with what they understood to be a positive rule of the company on the subject; and, if such a construction, or application of the rule is erroneous the company is responsible for it, because the rule does not show that it was intended to have a limited application. Hence the effect is the same as if the company had actually intended the rule to apply as the employees understood it; its language is in no respect ambiguous. The question then arises, was the failure to place a light on the rear of the tender that struck plaintiff, negligence for which defendant is liable? It was certainly negligence of a fellow servant, and for such negligence the carrier is liable under the federal act, for injury resulting, in whole or in part therefrom. If there had been a light on the rear of the tender, it is highly probable plaintiff would have seen it; and if he had not thought it would be

carrying a light he probably would have been more careful for his own safety. According to his testimony, which is not disputed on this point, he looked up the track and did not see the engine, and just had time to turn his head to look in the opposite direction, toward an incoming engine on a nearby track, when he was struck. The noise of this engine, he says, prevented his hearing the one that struck him. He knew the custom was to detach the engine from the train, drive it to the east end of the yard and then back it over the main line to the roundhouse, and admits that he was expecting it to return over the track about that time. The evidence also tends to prove that, if he had looked carefully, he could have seen the backing engine, by the aid of the lights shining upon the track from the depot and by the light of a street lamp nearby. But that only proves his contributory negligence, and is no defense to the action, and can be considered in mitigation of damages only. The jury could well believe, from the evidence, that the failure to have a light on the rear of the backing tender was a contributing cause of plaintiff's injury.

The giving of plaintiff's instruction No. 1 is assigned as error. In conformity with the agreed facts contained in the record, it told the jury that plaintiff and the train on which he was brakeman were engaged in interstate commerce. The objection urged is, not that the instruction does not correctly state the fact, but that it had a nullifying effect upon the force of defendant's contention that the relation of master and servant had ceased to exist before the accident on account of the length of time that had elapsed after he ceased work. When he ceased to labor the relation of master and servant did not immediately terminate. He was allowed a reasonable time to get off defendant's right of way, before the relation terminated. *Jones* v. *Virginian Ry. Co., supra.* Counsel insists that the evidence tends to prove that it was an hour and three minutes from the time plaintiff quit work, on account of the sixteen hour law, until he was injured, and that was an unreasonable time. We do not think so, and will return to this point a little later. But, admitting for the present, the force of the objection to this instruction, any erroneous impression it may have caused in the minds of the jury is

obviated by the giving of defendant's instructions Nos. 28 and 31, which told them that, if an employee remains about his place of employment longer than is reasonably necessary, under ordinary circumstances, after his employment ceases, the relation of master and servant is terminated and he is barred of recovery on account of injury received thereafter, unless for gross negligence of defendant, its agent or servant.

The giving of plaintiff's No. 3 is also complained of. It is as follows: ''The Court instructs the jury that if they believe from the evidence in this case that there was no light displayed on the rear of the tender of the engine that struck and injured the plaintiff, and that it had been prior to that time the custom of the defendant to have lights displayed on the rear of the tenders of engines under such circumstances running backward over the yard of the defendant at night, and that the plaintiff knew of such custom, then the plaintiff had the right to assume that no engine would be run backward over said yard at night, under such circumstances, without such light being displayed; and if the jury further believe from the evidence that the absence of such light from the tender of said engine was the proximate or contributing cause of plaintiff's injury, then the jury shall find for the plaintiff.'' One objection urged to this instruction is, that it ignores the servant's duty to look after his own safety. While it is still a duty of the servant, under the federal act, to use reasonable care for his own safety, his omission to do so does not defeat his right of recovery. The law respecting the effect of defendant's contributory negligence, if the jury believed him guilty thereof, was properly stated in plaintiff's instruction No. 4 which was given. Another objection to the instruction is that it submits to the jury the question of a custom among the employees to carry a light on the tender of a backing engine, and treats the failure of an employee to observe such custom as actionable negligence. We have already considered that question, and do not think it vitiated the instruction.

It is further complained of because it is a binding instruction and fails to present all the facts affecting plaintiff's right to recover. It does not submit to the jury the question whether more than a reasonable time had elapsed between the time plaintiff ceased to work and the time he was injured.

The question of reasonable time was one of fact for the jury, but if the fact that no more time was consumed than was necessary and reasonable is proven and not contradicted by other evidence, it is not error to assume it as an established fact, in an instruction. *Hutchinson* v. *U. S. Express Co.*, 63 W. Va. 128, and *Kuykendall* v. *Fisher*, 61 W. Va. 87. The only evidence relied on to prove unreasonableness of time is the length of time which intervened between the time plaintiff ceased to labor and the time of his injury; there is evidence that it was an hour and three minutes. Not a witness testified as to how much time it required for a trainman to wash, change his clothing and get ready to leave his train; nor does it appear how much of the time was consumed in changing crews and pulling the train farther up in the yards. Plaintiff testified that he was on the front of the train when it entered the yards and got off and waited until the caboose came up to where he was. How long this required does not appear. Appliances for cleaning up, as well as plaintiff's clothing, were in the caboose. No witness said he consumed too much time. He details what he did, and the effect of his testimony is to prove that he consumed no more time than was necessary. He says Jones was on the rear of the train, and had a chance to wash and clean up before the train arrived. He admits Jones cooked some sausage on the caboose and says he may have eaten some of it himself, but he says that did not cause any delay; that he was busy cleaning up while Jones did the cooking. It was then nearly four o'clock A. M.; and they were doubtless tired and hungry. The preparation of a little food, under such circumstances, was not an unreasonable thing to do. Plaintiff swears the train arrived at 3:30 instead of 3:15. If he is correct, it reduces the time consumed to about three quarters of an hour. However, for the purposes of this point, we must assume the defendant's evidence as to the time to be true. The custom was for the train crew, on arriving on the yards, to uncouple the engine and take it to the roundhouse by the same route the engine was taken in this instance, provided they were not prevented by the sixteen hour law. Plaintiff testified that he had often done so, and that it required only a few minutes. In view of all the foregoing facts and circumstances, which are not controverted, and the further fact that

it was the engine that hauled the train on which plaintiff was employed that injured him, thus showing that it could not have been long after the new crew took charge of it, and plaintiff got on the caboose, completed his toilet and started across the yards to his lodging house, until the accident. In view of the uncontradicted testimony of plaintiff, and the established facts, the jury would not have been warranted in finding the time unreasonable, if the question had been submitted to them. The only evidence tending to prove unreasonable time, on which they could possibly have so found was the length of time; and it can not be said, as matter of law, that an hour and three minutes was unreasonable. Hence, it plainly appears that the assumption of that fact in the instruction did not prejudice the defendant.

The giving of plaintiff's instruction No. 8 is also complained of. It reads as follows: "The Court instructs the jury that the law of fellow-servancy does not apply to this case, and therefore the acts or negligence of a fellow servant of the plaintiff cannot defeat the plaintiff's action in this case." It is claimed this instruction states a mere abstract principle of law; and, while the correctness of the principle is not denied, counsel insist that it tended to confuse the jury. The instruction does not inform the jury concerning the common law rule of fellow-servants, nor tell them why it should not be applied to the present case. Still we can not see how the giving of it could have confused the jury. While the better practice is to refuse such instructions, the giving of them is not always reversible error.

Defendant requested thirty-one instructions, only five of which were given,—Nos. 5, 7, 23, 28, and 31. The refusal to give the others is assigned as error, but not discussed in brief of counsel. The majority of them were framed on the theory that plaintiff's right was determinable by the common law. They relate to assumption of risk, contributory negligence and negligence of a fellow-servant, and would have applied those principles as defenses to plaintiff's action. We have already pointed out some of the effects of the Federal Employers Liability Act upon those rules.

Defendant's instruction No. 24 correctly states the law respecting the burden of proof, but it was properly refused

because its number 7, on the same subject, was given. Its No. 10, in so far as it states that it is the employee's duty to exercise reasonable care for his own safety, correctly propounds the law, but was properly denied because it was binding and made plaintiff's right of recovery depend upon his observance of that duty. We have already considered the effect of plaintiff's contributory negligence. No. 21 is similar to it, and would have told the jury that, where there were two ways of doing a thing, one less dangerous than the other, it is the duty of the employee to select the less dangerous way. It was properly refused because it made plaintiff's right depend upon his selection of the best way. Both of these instructions, however, were properly amended by the court, and given as amended. Nos. 27 and 29 were both on the subject of the reasonableness of the time plaintiff consumed in leaving his place of employment, after his services for the day had ended. We have already discussed this question in connection with the evidence bearing thereon, in considering the objections made to the giving of plaintiff's instruction No. 3. The same reasons for holding it not error to give it apply for holding that it was proper to refuse defendant's instructions Nos. 27 and 29. They would have told the jury, in effect, that an hour and three minutes was more than a reasonable time for plaintiff to go from his place of employment to a place of safety, and that defendant owed him no more duty than it owed to a mere trespasser or licensee. There was no appreciable evidence to support these instructions, and they were properly refused. *Chadister* v. *B. & O. R. Co.*, 62 W. Va. 566. We have carefully considered all defendant's other instructions and we find no error was committed in refusing them.

The verdict was rendered on the 3rd of September, 1913, and the court did not enter judgment thereon until the 13th of May, 1914, and then rendered judgment for the amount of the verdict with interest thereon from the date of the verdict. This is assigned as error. Sec. 18, Ch. 131, Code 1913, provides as follows: "Every judgment or decree for the payment of money, except where it is otherwise provided by law, shall bear interest from the date thereof, whether it be so stated in the judgment or decree or not." Sec. 14 of the

· same chapter authorizes a judgment for interest from the date of the verdict, only in case of actions founded on contract. The judgment in the present case being for a tort, there is no authority in law for giving judgment for interest, except from the date of the judgment. The judgment would bear interest from that date whether it so stated or not. *Talbott* v. *W. Va. &c. Ry. Co.,* 42 W. Va. 560; *Fowler* v. *B. & O. R. Co.,* 18 W. Va. 579; and *Hawker* v. *B. & O. R. Co.,* 15 W. Va. 628. The excessive interest being more than one hundred dollars, it is reversible error, but not such as calls for a new trial; it affects the judgment only.

The judgment will be reversed and judgment entered here for the amount of the verdict, with interest thereon from the 13th day of May, 1914, until paid, and costs in the lower court; but plaintiff in error, having substantially prevailed, is entitled to its costs in this court.

### ON PETITION FOR REHEARING.

After a careful consideration of the petition for a rehearing we are of the opinion to adhere to · our former decision. Counsel for plaintiff in error urge in their petition that our decision of the Jones Case, growing out of the same accident, holding that defendant was not liable, should control this case. The Jones Case was determined according to the principles of the common law, while this case is governed by the federal statute known as the "Employer's Liability Act." That act increases an interstate carrier's liability. It creates liability where none existed at the common law. And, in cases brought under it, that statute applies to the exclusion of the common law or state statutes. The sufficiency of the declaration is not discussed in the opinion in the Jones Case. It turned wholly upon the evidence, which was held not sufficient to prove a case of common law negligence. The evidence showed conclusively that Jones' death was caused either by his contributory negligence or by the negligence of a fellow servant, for neither of which was defendant responsible at the common law. But the carrier is made expressly liable by the federal act for the negligence of a fellow servant, and under it the contributory negligence of the injured servant does not necessarily defeat his recovery. Hence, even if the evidence in the

two cases were identical in all respects, except as to the fact that plaintiff was engaged in interstate commerce when he was hurt, which is not the case, the result need not be the same. The two cases were tried by different laws.

We have again carefully considered the evidence relative to the custom, prevailing among defendant's employes, of carrying a light on the rear of tenders of engines backing over the yards at night, and we are clearly of the opinion that there is ample evidence to carry the question of the prevalence of that custom as being founded upon one of defendant's printed rules, to the jury, although some of the witnesses say that the observance of the custom was sometimes neglected. We have sufficiently discussed, in the body of the opinion, the grounds for holding defendant liable for the prevalence of the custom, if the jury believed it actually existed, as to which the evidence was conflicting. Our attention is again called to certain instructions which it is claimed were prejudicial. We have carefully reconsidered them in connection with our discussion of them in the body of the opinion and do not think it is necessary to add anything to what we there said.

A rehearing is refused.

*Reversed and rendered.*

POFFENBARGER, JUDGE *(dissenting in part)*:

I would not reverse the judgment for inclusion of interest on the verdict. Sec. 18 of ch. 131 of the Code does not pertain to the question at all. It merely gives interest on judgments and decrees, whether they specifically provide for it or not, in all cases in which the law does not expressly withhold or deny it. No limitation thereof to judgments in actions *ex delicto* can be found in its terms. It deals with judgments and decrees. There are no decrees in causes *ex delicto*. Sec. 16 of the chapter gives interest from the date of the verdict, if there be one, in all judgments for the payment of money. This is such a judgment. The reference to principal does not limit the application to judgments in cases arising out of contract. The verdict is the principal sum, the amount on which interest is to be computed, except in those cases in which there happens to be a bond or other obligation calling for pay-

ment of money. Sec. 14, giving interest on the aggregate of principal and interest from the date of the verdict, covers all actions founded on contract. Sec. 16 means something more. It says when there is a recovery on a bond conditioned for the payment of money, as well as in all cases where a judgment or decree is rendered or made for the payment of money, it shall be for the aggregate of principal and interest due at the date of the verdict, if there be one, with interest thereon from such date.