# CHARLESTON.

HALL, ADMR. v. THE BOOMER COAL & COKE COMPANY.

Submitted February 8, 1916.  Decided February 15, 1916.

MASTER AND SERVANT—*Injury to Servant—Actionable Negligence—Failure to Warn.*

Without giving him notice and warning of the danger, or adopting, promulgating and enforcing some reasonable rules for his protection, it is actionable negligence for a coal mining company to put to work at or under its coal tipple in a place of danger a carpenter, not regularly employed there, and who is ignorant of the custom or practice of such company of dropping coal cars down an incline track under such tipple at irregular intervals without notice or warning to its employees, whereby he is injured and killed.

Error to Circuit Court, Kanawha County.

Action by Thomas P. Hall, administrator, etc., against the Boomer Coal & Coke Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Payne, Minor & Bouchelle,* for plaintiff in error.

*C. C. Knapp* and *McClintic, Mathews & Campbell,* for defendant in error.

MILLER, JUDGE:

Action on the case for negligently killing Perry E. Hall, a carpenter employed in building one of defendant's coal tipples. Plaintiff obtained a verdict and judgment for seven thousand dollars, and defendant sued out of this court the present writ of error.

The first point is that the court below erred in overruling defendant's demurrer to the declaration and each count thereof. The declaration is in two counts, the first predicated right of action on the ignorance of deceased, not regularly employed there, as to the custom of defendant in dropping empty cars under the tipple, where deceased was then at work, from an incline track without warning or signal of any kind, and the duty of defendant and breach of that duty to warn and instruct him, and its negligence in so dropping a heavy car upon him while at work under said tipple, resulting in his death.

The second count is like the first except that in addition to charging failure to instruct and warn deceased, the duty and breach of the duty of defendant to adopt, promulgate and enforce reasonable rules respecting the operation of its tipples and railroad cars thereunder from such incline track, and to give notice and warning of the approach of such cars to employees at work under such tipple, is also averred.

The demurrer presents three questions, the first, applicable to both counts, whether under the facts and circumstances the law imposed upon defendant the duty of warning and instructing; the second, applicable to the second count alone, whether under the same facts and circumstances, or generally, the law imposes on a coal mining company the duty to adopt,

promulgate and enforce any rules respecting the operation of coal cars upon and from incline tracks and under its tipples in the manner set out in the declaration; and third, whether the duty and breach of duty to warn and instruct, and to adopt, promulgate and enforce rules are well pleaded.

On the first question, deceased was not employed in connection with the operation of the coal tipple, or in the operation of the cars thereunder from the incline tracks; he was employed as a carpenter to assist in building and completing the tipple. If ignorant of the dangers incident to the manner of operating cars on the track at irregular intervals, as the declaration alleges, was he not entitled to be instructed and warned of the dangers, and how to avoid them? Generally it may be said to be the duty of a master to warn his servant against perils "arising from the manner in which the instrumentalities are affected by isolated events which occur at more or less frequent intervals during the performance of the servant's work, but which produce no permanent effect upon the intrinsic condition of the instrumentalities themselves." 3 Labatt on Master and Servant, section 1112; *Cave* v. *Blair Limestone Co.*, 74 W. Va. 752. This unless the dangers are so obvious that the servant does or should fully comprehend them. *Ewing* v. *Lanark Fuel Co.*, 65 W. Va. 726. The declaration in this case alleges ignorance of the deceased as to these matters. Whether he did know of the dangers incident to his special employment, and fully comprehended them, or that they were so obvious as to charge him with notice thereof, were questions of fact upon the evidence. The pleading, we think, was sufficient to admit the evidence on these questions.

Upon the second question, the duty to adopt, promulgate and enforce rules, alleged in the second count, we think this count is good on demurrer, alleging as it does, the breach of that duty, in connection with the like breach of defendant's duty to warn and instruct, contained also in the first count. Among other things it was objected to this count that the averment of the duty and breach of duty to adopt, promulgate and enforce rules, was too general, no specific and reasonable rule applicable being averred. We think, however, that the liberal rule adopted here, and applied in *Gallik* v. *Wheeling Steel & Iron Co.*, 75 W. Va. 533, 84 S. E. 253, makes this

count good also on demurrer. Here, as there, the averment is more than general. There the averment was the breach of duty to formulate rules for the stopping and starting of machinery, etc. Here it is limited to the operation of cars on the incline track and on the tipple where deceased was employed. Upon these considerations we think both counts of the declaration good, and that the demurrer was properly overruled.

Of the questions remaining to be considered, presented by exceptions to the introduction of testimony, instructions to the jury given and refused, interrogatories propounded to the jury, interrogatories rejected, and defendant's motion for a new trial, the first is, does the evidence show a breach of duty to warn and instruct the deceased justifying the verdict? The deceased was not regularly employed in operating the tipple or the cars on the incline track. His employment on the tipple was special, and the jury may well have found from the evidence, as contended by the plaintiff, that the only other instance in which deceased was employed there, was on the 12th day of November, 1911, a Sunday, preceding his injury and death on the 24th day of November, 1911, when all operations at the coal tipple were suspended, and that the only other time he worked on that tipple was on the morning of his injury and death, and that he was ignorant of the fact that cars were dropped from the incline at irregular intervals of the day without warning or notice to the employees, that he had no actual notice of the dangers to which he was thus subjected, and that they were not apparent to him from any knowledge he might have acquired from the character of the work done by him upon and about said tipple. And the evidence we think shows quite conclusively, and the jury were justified in finding as they evidently did, that deceased was at the place appointed for him to work, and in the discharge of a duty that had been particularly assigned to him on the morning of his injury, as preliminary in engaging with others in the work of putting in braces upon the tipple, namely, of going up the hill in the vicinity of the tipple and bringing to the place where he was injured blocks and tackle to be there used in hoisting and putting in place the pieces of timber required. The evidence of Nihoof, the boss carpenter, fully satisfies us

on this subject, and the jury were evidently convinced from this and other evidence that deceased was at the time of his injury and death at the place of his employment, and where he had the right to be. So we think under the facts and circumstances he was entitled to notice and warning. The declaration alleges and the proof satisfies us that other workmen were notified and warned generally, to be careful, but that deceased was not even so warned in a general way. At all events the evidence justified the jury in so finding.

The next question is does the evidence show a breach of duty to adopt, promulgate and enforce rules? Upon this question plaintiff relies particularly upon the provision of our mining law, section 34, chapter 15H, serial section 493, Code 1913, as follows: "34. There shall be adopted by the operator of every mine in this state special rules for the government and operation of his mine or mines, covering all the work pertaining thereto in and outside of the same, which however, shall not be in conflict with the provisions of the mining law of this state; such rules when established shall be printed on card board, in the languages spoken by ten or more employees, and shall be posted up in the drum house, tipple or some other conspicuous place about the mines where the same may be seen and observed by ͨ ',the employees at such mines, and when said rules are sͨ ᵧ .ted the same shall operate as a notice to all employees , such mine of their acceptance of the conditions there ͨᵧ and it shall be the duty of each mine operator to furnish ɩ printed copy of said rules to each of his employees when requested by either or any of them."

In *Jaggie v. Davis Colliery Co.*, 75 W. Va. 370, 84 S. E. 941, we decided, that this statute would require a rule prescribing the maximum number of cars that should be handled by the motors operated in the mine. The statute in terms calls for *special rules* governing *all the work in and outside of the mine.* Generally speaking the principal work of a coal company outside its mine, we would say, is the operation of its coal tipple and tracks, used in connection therewith. While the statute calls for *special rules* pertaining *to all the work,* we think the proper construction of the statute limits it to all such reasonable rules as can be specially applied to a coal operation, and not that there should be special rules applicable

77 W. Va.

to every conceivable form of work, whether reasonable or unreasonable. In other words, that we should give the statute a practical construction. But we must not emasculate it and give it no effect, or disregard its terms. It contains the mandate of the legislature and should be enforced, as the legislature intended it to be.

Whether a general rule applicable to all employees operating the tipple and the cars upon the incline track would be reasonable and practicable is a question which is not presented, and which we should not undertake to decide until it is presented. The defendant insists, however, that the rules and principles applicable to servants employed in the operation of railroad yards, illustrated by the case of *Jones* v. *Virginian Railway Co.*, 74 W. Va. 666, 83 S. E. 56; *Aerkfetz* v. *Humphreys*, 145 U. S. 418, and certain Virginia cases cited, should control. We do not think the principles applicable to that class of cases decisive of a case like this. The case of *Seaboard Air Line Co.* v. *Koennecke*, 239 U. S. 352, U. S. Adv. Ops. 1915, page 126, opinion by Mr. Justice Holmes, marks an exception to the general rule enunciated, which, while it may not exactly fit this case, is apropos to the argument presented. The court in the opinion says: "We see equally little ground for the contention that there was no evidence of negligence. It at least might have been found that Koennecke was killed by a train that had just come in and was backing into the yard, that the movement was not a yard movement, that it was on the main track, and that there was no lookout on the end of the train and no warning of its approach. In short, the jury might have found that the case was not that of an injury done by a switching engine known to be engaged upon its ordinary business in a yard, like *Aerkfetz* v. *Humphreys*, 145 U. S. 418."

The point of the exception to the general rule noted in the Koennecke case is, that the railway company is not relieved from giving notice or warning, where there is some irregular or unusual movement of trains or cars in the yards, and of which workmen employed there would not be put upon notice. In such cases the railway company is not relieved of its common law or statutory obligation to give timely notice or warning, or to protect them by some practical rule.

With respect to the special employment of deceased, we think the law required either special notice or warning when sent into such a place of danger, or that some general rule applicable to the particular case, and furnishing some reasonable protection to him, should have been adopted and enforced. The second count of the declaration alleges that neither the one nor the other was employed by the defendant in this case, and the evidence was such as to justify the jury in finding want of notice or warning; and it is admitted that no rule applicable had been adopted and promulgated by the defendant for his protection. These alternative rights to protection were fully presented by the pleadings and proofs, and by plaintiff's instructions numbers one and two, and were justified by the principles enunciated in *Robinson* v. *City & Elm Grove Ry. Co.*, 71 W. Va. 423, *Fulton* v. *Crosby & Beckley Co.*, 57 W. Va. 91, and other authorities cited and relied upon by counsel.

Further upon the instructions. Of the thirty seven instructions requested by defendant, the court gave twenty three, covering every conceivable phase of its theory of the case. The rejected ones, so far as we can see, would have gone counter to the principles upon which our decision is made to turn, and we think were properly rejected. So also with respect to interrogatories numbers three and four rejected; and besides an answer thereto by the jury would have been indecisive of the case. We see no substantial error in the ruling of the court upon the evidence, and it follows of course that the court committed no error in denying the defendant a new trial.

*Affirmed.*